2012 UT 57

**In the Matter of the Estate of Michael G. Kampros, Deceased.**

**Willow Kampros RAPELA, Plaintiff and Appellant,**

v.

**Mark GREEN, and Sophie Gibson, Defendants and Appellee.**

No. 20100915.

Supreme Court of Utah.

Sept. 11, 2012.

Joseph C. Rust, Ryan B. Hancey, Salt Lake City, for appellant.

Stephen M. Sargent, Michael D. Black, Rita M. Cornish, Salt Lake City, for appellee.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 In this case we are asked to review whether the district court properly denied beneficiary Willow Rapela's request to remove Mark Green as trustee of the Michael G. Kampros Family Trust (Trust). After Michael G. Kampros's death, Mr. Green and Sophie Gibson became trustees of the Trust. Ms. Rapela, Mr. Kampros's daughter and the successor trustee, requested removal of Mr. Green and Ms. Gibson pursuant to section 75–7–706(2)(d) of the Utah Uniform Trust Code (Utah Trust Code). The district court granted her request with respect to Ms. Gibson, but declined to remove Mr. Green. The district court held that Mr. Green had more experience and better qualifications than Ms. Rapela to manage the Trust's assets. As a result, the district court concluded that Mr. Green's removal would not serve the best interests of the Trust's beneficiaries. Ms. Rapela appeals this conclusion. We affirm and hold that the district court correctly denied Ms. Rapela's request to remove Mr. Green as trustee.

## BACKGROUND

¶ 2 Michael G. Kampros created the Trust and executed a will on April 13, 1998. Mr. Kampros's will provided for specific gifts, and his residuary estate poured over to the Trust. The Trust identified Mr. Kampros's children and their issue as beneficiaries. Ms. Rapela is the sole surviving child of Mr.

Kampros.[1] She has one adult child and one minor child.

¶ 3 The Trust was revocable during Mr. Kampros's lifetime but became irrevocable upon his death. During his lifetime, Mr. Kampros appointed himself trustee of the Trust. Upon his death, the Trust provided that Mr. Green and Ms. Gibson, serving jointly, or the survivor serving alone, would serve as successor trustees. It further provided that, in the event that both Mr. Green and Ms. Gibson ceased to serve as trustees, Ms. Rapela would serve as successor trustee.

¶ 4 Mr. Kampros selected Mr. Green and Ms. Gibson as trustees because of his relationship with them and because of their experience with the business interests that comprised the largest part of his estate and the Trust. In particular, Ms. Gibson is Mr. Kampros's sister, who had worked as the bookkeeper at Club 90, a significant Trust asset, since 1982. Mr. Green and Mr. Kampros were business partners. Mr. Green advised Mr. Kampros on real estate investments and coinvested with Mr. Kampros in several limited liability companies (LLCs).

¶ 5 Mr. Kampros died on November 11, 2009. Shortly thereafter, Mr. Green and Ms. Gibson filed an application to commence informal probate of Mr. Kampros's will. Ms. Rapela filed a separate lawsuit in which she requested removal of Mr. Green and Ms. Gibson as trustees pursuant to section 75–7–706(2)(d) of the Utah Trust Code. The parties agreed by stipulation to consolidate the two cases.

¶ 6 The district court heard the parties' arguments regarding removal during a one-day bench trial. Ms. Rapela asked the district court to consider evidence alleging that Mr. Green's relationship with Mr. Kampros had deteriorated prior to Mr. Kampros's death. Ms. Rapela claimed that the alleged deterioration showed a substantial change in circumstances. The district court declined to consider the evidence; it held that a substantial change of circumstances, as contemplated by section 706(2)(d), could occur only after Mr. Kampros's death.

¶ 7 After the hearing, the district court issued findings of fact and conclusions of law. The district court first considered whether to remove Ms. Gibson from her role as trustee. It found that she violated her fiduciary duty to the Trust by removing chairs from Club 90 for her personal use. The district court also recognized "obvious and open hostility" between Ms. Gibson and Ms. Rapela. As a result, it found that removal of Ms. Gibson as trustee best served the interests of the Trust's beneficiaries.

¶ 8 Second, the district court evaluated whether to remove Mr. Green. It considered Ms. Rapela's claim that Mr. Green had a conflict of interest with the Trust. Specifically, Mr. Green and the Trust both had ownership interests in the same LLCs. The district court concluded that "[w]hatever conflict of interest exists is more hypothetical than actual, given the lack of evidence that any reasonable trustee would elect to sell [the LLCs] assets at this point in time."

¶ 9 Next, the district court considered whether Ms. Rapela should replace Mr. Green as trustee. It found Ms. Rapela to be mature, intelligent, and a suitable trustee. The district court then compared Ms. Rapela to Mr. Green. It found that Mr. Green's experience with the Trust assets made him a more capable trustee. In particular, the district court found that Mr. Green "has demonstrated good judgment, ... has a wealth of experience and particularly experience with respect to some of the most difficult assets of the trust, and ... [he] is significantly more qualified to deal with these assets." As a result, the district court reasoned that Mr. Green was the most qualified trustee to act in the best interest of all of the Trust's beneficiaries.

¶ 10 Based on its findings, the district court removed Ms. Gibson, but did not remove Mr. Green. It removed Ms. Gibson because of her breach of fiduciary duty to the Trust and the hostility between her and Ms. Rapela, but it found that removal of Mr. Green would not serve the Trust's best inter-

1. The parties dispute whether Ms. Rapela is the sole qualified beneficiary of the Trust. Ms. Rapela's status as the sole qualified beneficiary is not relevant to the disposition of this case. Therefore, we decline to address the parties' dispute.

ests. It therefore permitted Mr. Green to remain as the sole trustee for the Trust.

¶ 11 Ms. Rapela filed a timely appeal to challenge the district court's denial of her request to remove Mr. Green. We have jurisdiction pursuant to section 78A–3–102(3)(j) of the Utah Code.

### STANDARD OF REVIEW

¶ 12 Ms. Rapela asks us to review the district court's denial of her request to remove Mr. Green as trustee under section 706(2)(d) of the Utah Trust Code. Before a district court may remove a trustee, three prongs must be satisfied. *See* UTAH CODE § 75–7–706(2)(d). Each prong requires the district court to make underlying factual findings and then draw a legal conclusion regarding whether the prong has been satisfied. On appeal, Ms. Rapela has challenged only the district court's conclusions of law for the three prongs.[2] "We review the district court's conclusions of law, including [its] interpretations of statute, for correctness." *Weiser v. Union Pac. R.R. Co.*, 2010 UT 4, ¶ 29, 247 P.3d 357. Once section 706(2)(d)'s three prongs have been satisfied, the ultimate decision to remove a trustee lies within the district court's sound discretion and we review the district court's decision for an abuse of discretion. *See* UTAH CODE § 75–7–706(2)(d) (stating that "[t]he [district] court may remove a trustee if" the three prongs of section 706(2)(d) have been satisfied).

2. Because Ms. Rapela challenges only the district court's legal conclusions, she had no obligation to marshal the facts on appeal. *See* UTAH R. APP. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding.").

3. Mr. Green also argues that he may not be removed under sections 706(2)(a) and 706(2)(c) of the Utah Trust Code. In her reply brief, Ms. Rapela clearly states that she does not seek removal under sections 706(2)(a) and 706(2)(c). Accordingly, we do not address those sections.

4. In her brief, Ms. Rapela argued that a substantial change of circumstances, standing alone, provided an independent ground for removing

### ANALYSIS

¶ 13 Ms. Rapela contends that the district court improperly denied her request to remove Mr. Green as trustee pursuant to section 706(2)(d) of the Utah Trust Code. Section 706(2)(d) [3] provides:

The court may remove a trustee if ... [1] there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, [2] the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and [3] a suitable cotrustee or successor trustee is available.

¶ 14 Section 706(2) is applied in two sequential steps. First, a district court must conclude that the section's three prongs have been met. If the three prongs have been met, the district court can exercise its discretion and "may remove a trustee." If any of the three prongs are not met, the district court lacks discretion to remove a trustee.

¶ 15 The parties agree that section 706(2)(d) provides a single test for removal,[4] the first prong of which may be satisfied either by a substantial change of circumstances or a request for removal by all of the qualified beneficiaries.[5]

¶ 16 The parties focus their arguments on the best interests prong of section 706(2)(d). We hold that the district court did not err when it ruled that removal of Mr. Green would not serve the beneficiaries best interests. Because Ms. Rapela cannot satisfy the best interests prong, the district court did not have discretion to remove Mr. Green.

Mr. Green, but she abandoned that position during oral argument.

5. We note that the Utah Trust Code is substantially similar to the Uniform Trust Code (Uniform Code) and that the comments to the Uniform Code comport with the parties' interpretation of section 706(2)(d). The comments to the Uniform Code state that "[b]efore removing a trustee on account of changed circumstances, [a] court must also conclude that removal is not inconsistent with a material purpose of the trust, that it will best serve the interests of the beneficiaries, and that a suitable cotrustee or successor trustee is available." UNIF. TRUST CODE § 706 cmt. This confirms that section 706(2)(d) of the Utah Trust Code creates a single test for removal.

## I. THE DISTRICT COURT CORRECTLY HELD THAT REMOVAL DID NOT SERVE THE BEST INTERESTS OF THE TRUST'S BENEFICIARIES

¶ 17 Ms. Rapela claims that the district court committed five legal errors when it concluded that removal of Mr. Green did not serve the best interests of the Trust's beneficiaries. First, Ms. Rapela claims that the best interests test should be waived if the remaining two prongs of section 706(2)(d) of the Utah Trust Code have been satisfied. Second, she argues that the district court erred because it did not defer to her explanation on behalf of the beneficiaries that removal served the beneficiaries' best interests. Third, Ms. Rapela contends that Mr. Green has a conflict of interest and cannot act in the beneficiaries' best interests because he has a personal interest in LLCs in which the Trust also has an interest. Fourth, she argues that the district court improperly compared her experience and qualifications with Mr. Green's when evaluating the beneficiaries' best interests. Finally, Ms. Rapela alleges that, because Mr. Green's relationship with Mr. Kampros deteriorated prior to Mr. Kampros's death, Mr. Green cannot act in the beneficiaries' best interests now. We hold that the district court did not err when it denied Ms. Rapela's request to remove Mr. Green as trustee.

### A. Section 706(2)(d) Provides a Conjunctive Test and the Best Interests Element Must be Satisfied Before a District Court May Remove a Trustee

¶ 18 Ms. Rapela first claims that the district court should have waived compliance with the best interests prong because she had already satisfied the remaining elements of section 706(2)(d). Mr. Green responds that removal must serve the beneficiaries' best interests and that Ms. Rapela's interpretation would eliminate the best interests prong from section 706(2)(d). We agree with Mr. Green and hold that section 706(2)(d) provides a conjunctive test. Therefore, each of its elements must be satisfied before the district court may remove a trustee.

¶ 19 When interpreting a statute, "[o]ur primary objective ... is to give effect to the intent of the legislature." *State v. J.M.S. (In re J.M.S.)*, 2011 UT 75, ¶ 13, 280 P.3d 410. "To do so, we look first to the statute's plain language and presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." *Id.* (alteration omitted) (internal quotation marks omitted). Moreover, we construe statutes such that no part or provision "will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another." *Id.* ¶ 22 (internal quotation marks omitted).

¶ 20 Section 706(2)(d) contains three prongs joined by the conjunctive term "and." Thus, a party seeking removal must satisfy all three prongs of section 706(2)(d) before a district court "may" remove a trustee. Ms. Rapela's reading of section 706(2)(d) would eliminate "and" from the statute and make satisfaction of the best interests prong unnecessary. We reject this construction because it would render the best interests prong "inoperative or superfluous." *Id.* at ¶ 22. Accordingly, the district court correctly decided that Ms. Rapela must satisfy each of section 706(2)(d)'s three elements before Mr. Green could be removed.

### B. The Phrase "Best Interests of the Beneficiaries," as Used in Section 706(2)(d), Means the Beneficiaries' Interests Set Forth in the Trust, Not the Beneficiaries' Subjective Desires

¶ 21 Ms. Rapela argues that, in considering removal, the district court must give "first and foremost consideration" to the beneficiaries' subjective desires. Mr. Green responds that section 706(2)(d) should be interpreted to give effect to the benefits the trustor intended to confer, not the beneficiaries' desires. We hold that the best interests of the beneficiaries are defined by the terms of the trust.

¶ 22 To satisfy the best interests prong, a beneficiary must show "that removal of the trustee best serves the interests of all of the beneficiaries." UTAH CODE § 75–7–706(2)(d). The Utah Trust Code defines "[i]nterests of the beneficiaries" as "the beneficial interests provided in the terms of the trust." *Id.*

§ 75–7–103(1)(e). Similarly, the Uniform Trust Code states that "[t]he term 'interests of the beneficiaries' means the beneficial interests as provided in the terms of the trust, *not as defined by the beneficiaries.*" UNIF. TRUST CODE § 706 cmt. (emphasis added). These definitions comport with the Utah Trust Code's policy that courts shall "'discover and make effective the intent of a decedent in distribution of his property.'" *Patterson v. Patterson,* 2011 UT 68, ¶ 33, 266 P.3d 828 (quoting UTAH CODE § 75–1–102(1), (2)(b) (1993)). Thus, when considering removal, courts must give effect to the beneficial interests identified in the trust and intended by the trustor, not to the beneficiaries' subjective desires. We therefore reject Ms. Rapela's contention that the district court owed deference to her desire to remove Mr. Green when it evaluated the beneficiaries' best interests.

¶ 23 Ms. Rapela also claims that a beneficiary's request for removal should always be granted unless doing so would be detrimental to the best interests of the beneficiaries. But section 706(2)(d) permits removal of a trustee only when "removal of the trustee *best* serves the interests of all of the beneficiaries." (emphasis added). In other words, a district court may remove a trustee only when it is the *most* advantageous way to promote the beneficiaries' interests. Ms. Rapela advocates a less stringent standard that would permit removal in circumstances that are not detrimental to the beneficiaries' interests, even though they may not be in the beneficiaries' *best* interests. Her proposed standard departs from the plain language of section 706(2)(d). Accordingly, we reject Ms. Rapela's proposed "not detrimental" standard and hold that a district court may remove a trustee only when it serves the best interests of the beneficiaries.

*C. Mr. Green's Personal Ownership in Assets Also Partially Owned by the Trust Neither Compromises His Ability to Act in the Beneficiaries' Best Interests nor Constitutes Self–Dealing*

¶ 24 Ms. Rapela argues that Mr. Green's personal ownership in LLCs in which the Trust also owns an interest creates an irreconcilable conflict of interest with the Trust. She also claims that even if no actual conflict of interest has arisen Mr. Green's personal ownership in the LLCs constitutes impermissible self-dealing.[6] We disagree.

¶ 25 We start by addressing Ms. Rapela's claim that Mr. Green's personal ownership in the LLCs prevents him from acting in the beneficiaries' best interests. Before the district court, Ms. Rapela pointed out that both Mr. Green and the Trust owned interests in some of the same LLCs. She claimed that Mr. Green failed to liquidate the LLCs, as required by their operating agreements. She alleged that Mr. Green did so because it was in his personal interest to preserve the LLCs until market conditions improved, even though it was in the Trust's best interest to liquidate the LLCs immediately.

¶ 26 Mr. Green responded that the LLCs' operating agreements had been modified to postpone liquidation and that immediate liquidation was not in the best interests of the Trust or its beneficiaries. Despite his personal interest in the LLCs, we hold that Mr. Green had authority to hold the Trust's LLC interests until, in his judgment, they should be disposed of.

¶ 27 "A trustee has a duty of loyalty to the beneficiaries of a trust." *Wheeler ex rel. Wheeler v. Mann,* 763 P.2d 758, 759 (Utah 1988). The trustee's duty of loyalty requires him to "administer the trust solely in the interests of the beneficiaries." UTAH CODE § 75–7–802(1). The duty of loyalty does not, however, preclude a trustee from "collecting, holding, and retaining trust assets received from a trustor until, in the judgment of the trustee, disposition of the assets should be made, even though the assets include an asset in which the trustee is personally interested." *Id.* § 75–7–802(8)(f).

¶ 28 Mr. Green did not violate his duty of loyalty to the Trust's beneficiaries, even

6. As previously stated, Ms. Rapela raises no factual issues on appeal and we address her arguments solely as a matter of law.

though he and the Trust both own interests in the LLCs. The Utah Trust Code expressly permits Mr. Green to retain the Trust's LLC interests until, in his judgment, they should be disposed of, even though he owns a personal interest in them. *See id.* § 75–7–802(8)(f). Mr. Green properly exercised his judgment to retain the LLCs; he testified that immediate liquidation would not serve the Trust's best interests. The fact that retaining the LLCs also served his individual interests does not change our analysis. Indeed, the district court found that "there is no evidence . . . that it makes any business sense to liquidate [the LLC] interests or that the estate would be better served by having those interests liquidated as a means of paying the estate taxes." As a result, Mr. Green's personal ownership in the LLCs neither caused an irreconcilable conflict of interest with the Trust nor caused him to breach his duty of loyalty. Moreover, his personal ownership in the LLCs, standing alone, did not prevent him from acting in the best interests of the Trust's beneficiaries. Rather, it appears that the interests of the beneficiaries and Mr. Green's personal interests were entirely compatible because it simply was not a good time to sell.

¶ 29 We emphasize that section 802(8)(f) does not grant a trustee carte blanche to retain trust assets. Indeed, the trustee must still "administer the trust expeditiously and in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with [the Utah Trust Code]." *Id.* § 75–7–801. In this case, however, Ms. Rapela has not claimed that Mr. Green acted in bad faith when he chose not to liquidate the LLC interests.

▮ ¶ 30 Ms. Rapela also argues that Mr. Green's personal ownership in the LLCs, and his role as trustee for the Trust's LLC interests, violate the prohibition against self-dealing, even if no actual conflict of interest has occurred. In support of her position, Ms. Rapela relies on *Wheeler,* 763 P.2d at 760. Mr. Green contends that the doctrine of self-dealing does not apply here because Mr. Kampros appointed him as trustee with the knowledge that his personal interests might conflict with the Trust's interests. We agree with Mr. Green.

¶ 31 In *Wheeler,* a trustee, Stanley Mann, invested trust assets in two corporations that he managed and predominantly owned. *Id.* at 759. We held that Mr. Mann impermissibly engaged in self-dealing because he "place[d] himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." *Id.* at 760 (internal quotation marks omitted).

¶ 32 We distinguished *Wheeler* in *Eagar v. Burrows,* 2008 UT 42, 191 P.3d 9. In *Eagar,* Ida Burrows granted her stepson, Ray Burrows, durable power of attorney. *Id.* ¶¶ 2, 5. The power of attorney gave Ray broad authority to control Ida's real and personal property. *Id.* ¶ 5. Ida was hospitalized and Ray, acting under the power of attorney, distributed Ida's personal property to her eight children, including himself. *Id.* ¶¶ 7, 34. After Ida's death, one of her children claimed that Ray's distribution constituted impermissible self-dealing. *Id.* ¶ 31. We held that "the doctrine of self-dealing does not apply where the testator knowingly placed his trustee . . . in a position which he knew might conflict with the interest of the trust . . . and gave [the trustee] the power to act in that dual capacity." *Id.* ¶ 33 (internal quotation marks omitted); *see also* RESTATEMENT (THIRD) OF TRUSTS § 37 cmts. f,f(1) (2003) ("Ordinarily, a court will not remove a trustee named by the settlor upon a ground that was known to the settlor at the time the trustee was designated. . . . Thus, the fact that the trustee named by the settlor is one of the beneficiaries of the trust, or would otherwise have conflicting interests, is not a sufficient ground for removing the trustee. . . .").

¶ 33 When Mr. Kampros appointed Mr. Green as trustee, he knew that Mr. Green held personal interests in the LLCs. In fact, the district court found that Mr. Kampros appointed Mr. Green as trustee because of Mr. Green's experience with "the business interests that comprised the largest part of [the] estate and the trust." Because Mr. Kampros knew of Mr. Green's interest in the LLCs at the time he created the Trust, Mr. Green's involvement with the LLCs personal-

ly and as trustee does not violate the prohibition against self-dealing.

¶ 34 We note, however, that Mr. Kampros's appointment of Mr. Green as trustee does not dispense with all of Mr. Green's underlying fiduciary duties. Indeed, Mr. Green may still violate his duty of loyalty to the beneficiaries if he acts in bad faith or unfairly. RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. c(2) (2007) ("Accordingly, no matter how broad the provisions of a trust may be in conferring power to engage in self-dealing or other transactions involving a conflict of fiduciary and personal interests, a trustee violates the duty of loyalty to the beneficiaries by acting in bad faith or unfairly."). But here, Ms. Rapela has not argued that Mr. Green acted in bad faith or unfairly.

D. *It Was Appropriate for the District Court to Compare Mr. Green's and Ms. Rapela's Experience and Qualifications in Evaluating the Best Interests of the Beneficiaries*

¶ 35 Ms. Rapela claims that the district court erred when it compared her experience and qualifications to those of Mr. Green to determine whether removal best served the interests of all of the beneficiaries. Mr. Green counters that it was appropriate for the district court to compare Ms. Rapela's and his "experience, qualifications, and familiarity with the [T]rust assets" to determine who would best serve the interests of the beneficiaries. We hold that the district court permissibly compared Ms. Rapela's and Mr. Green's qualifications when it evaluated the best interests of the beneficiaries.

¶ 36 We have not previously addressed whether an evaluation of the beneficiaries' best interests may include comparison of a current trustee and potential successor trustees. But persuasive authority from other jurisdictions permits such a comparison. *See, e.g., In re Fleet Nat'l Bank's Appeal from Probate,* 267 Conn. 229, 837 A.2d 785 (2004). In *Fleet National Bank,* the Connecticut Supreme Court considered an appeal from a corporate trustee who had been removed pursuant to section 45a–242(a)(4) of the Connecticut General Statutes. *Id.* at

787–88. The court considered section 242(a)(4) and held that it does not focus on whether an existing trustee has performed inadequately. *Id.* at 797. Instead, it focuses on "whether there is another entity that, for some reason, may perform better or provide different and more desirable benefits as administrator, or is otherwise better suited to serve as [trustee] for a particular trust." *Id.; see also Davis v. U.S. Bank Nat'l Ass'n,* 243 S.W.3d 425, 430–31 (Mo.Ct.App.2007) (comparing the fees charged by an existing trustee and potential successor trustee when applying the best interests test).

¶ 37 Section 706(2)(d) of the Utah Trust Code is substantially similar to section 242(a)(4) of the Connecticut General Statutes. Thus, *Fleet National Bank's* interpretation of section 242(a)(4) is instructive regarding our interpretation of section 706(2)(d). Specifically, section 706(2)(d) permits consideration of whether another entity may perform better than the existing trustee. Accordingly, we hold that a district court may permissibly compare the characteristics of an existing trustee with potential successor trustees when applying the best interests test.

¶ 38 Here the district court found that, while Ms. Rapela would be a suitable trustee, "Mr. Green is more capable [because] ... he has a wealth of experience ... with respect to some of the most difficult assets of the trust, and he is significantly more qualified to deal with these assets." The district court also determined that "[t]here is no evidence that Mr. Green has not served in his capacity ... as trustee in a manner consistent with all applicable laws and consistent with the best interests of the estate and of the beneficiaries."

¶ 39 A district court may also consider circumstances other than experience and qualifications when comparing existing and successor trustees to determine whether removal will serve the beneficiaries' best interests. In particular, a district court may consider the following circumstances: the experience and qualifications of the trustees; their fees; the trustees' understanding of the beneficiaries' personal and financial situations; the trustees' personal relationship

with the beneficiaries; tax obligations based on the trustee's location; the trustor's intent, as expressed in the trust; convenience and efficiency to the beneficiaries; and any other material circumstances. *See, e.g., Fleet Nat'l Bank,* 837 A.2d at 797 n. 17 (considering beneficiaries' claim that removal of the existing trustee was in their best interest because the successor trustee "provided more personalized fiduciary services and charged lower fees, and [the trustee's] appointment served the goals of increased convenience and efficiency"); *Fleet Bank v. Foote,* No. CV–02–0087512S, 2003 WL 22962488, at *3 (Conn.Super.Ct. Dec. 2, 2003) (permitting removal of a corporate trustee to allow beneficiaries to follow two financial advisors to a second corporate trustee because doing so would allow the beneficiaries to "maintain the close personal relationship which [had] developed with the financial advisors"); *Davis,* 243 S.W.3d at 430–31 (holding that removal was factually supported because the "[successor trustee] is within a thirty-minute drive of [the beneficiaries'] house; changing the domicile of the Trust to Delaware would avoid out of state income tax being paid on Trust income; the successor trustee has a complete understanding of [the beneficiaries'] unique personal financial situation; and [the successor trustee] will charge lower fees than [the existing trustee]"). On appeal, Ms. Rapela argues only that the district court erred as a matter of law when it compared her experience and qualifications with Mr. Green's. She does not argue that the district court should have, but failed to, consider other circumstances when it compared her to Mr. Green.

¶ 40 In support of her position that comparison of existing and successor trustees' experience and qualifications is not proper, Ms. Rapela offers a hypothetical. She poses a situation where a corporate trustee charges an excessive fee, but may not be removed because it has more experience than a potential successor trustee who charges a lower fee. Ms. Rapela's hypothetical incorrectly assumes that a district court may consider only experience and qualifications when comparing existing and successor trustees. In-

stead, a district court may consider a variety of circumstances when comparing trustees. Thus, in Ms. Rapela's hypothetical, the district court could consider the trustees' qualifications and fees and then determine if removal served the beneficiaries' best interests.

¶ 41 In summary, it was appropriate for the district court to compare Mr. Green's and Ms. Rapela's experience and qualifications in determining whether removal of Mr. Green best served the beneficiaries' interests. And had the parties asked it to do so, the district court could also have considered a variety of other circumstances when comparing Mr. Green and Ms. Rapela.

*E. Ms. Rapela Failed to Preserve Her Argument that Deterioration in the Relationship Between Mr. Green and Mr. Kampros Prevented Mr. Green From Acting in the Best Interests of the Beneficiaries*

¶ 42 Ms. Rapela asserts that an alleged deterioration in Mr. Green's and Mr. Kampros' relationship prior to Mr. Kampros's death prevented Mr. Green from acting in the beneficiaries' best interests. We hold that Ms. Rapela failed to preserve this argument.

¶ 43 "We generally will not consider an issue unless it has been preserved for appeal." *Patterson,* 2011 UT 68, ¶ 12, 266 P.3d 828. To preserve an issue for appeal, the party claiming error must (1) specifically raise the issue in the district court, (2) "in a timely manner," and (3) support the claim with "evidence and relevant legal authority." *Donjuan v. McDermott,* 2011 UT 72, ¶ 20, 266 P.3d 839. We have excused parties from the preservation rule "under 'exceptional circumstances,' or when 'plain error' has occurred."[7] *Patterson,* 2011 UT 68, ¶ 13, 266 P.3d 828.

¶ 44 Before the district court, Ms. Rapela argued that, under the first prong of section 706(2)(d), discord between Mr. Green and Mr. Kampros constituted a substantial change in circumstances. She offered affidavits in support of this position, but the district court excluded them. It held that evi-

---

7. Ms. Rapela does not argue that exceptional circumstances or plain error are present here.

dence of a change in circumstances prior to Mr. Kampros's death was not the "substantial change of circumstances" to which the statute refers.

¶ 45 Based on our review of the record, Ms. Rapela never argued that this same evidence applied to the second, best interests prong of section 706(2)(d). Specifically, Ms. Rapela never argued that Mr. Green could not act in the best interests of the beneficiaries as a result of the alleged deterioration in his relationship with Mr. Kampros. To the extent that Ms. Rapela may have raised this argument, she has failed to direct us to a record citation showing where she did so. *See* UTAH R. APP. P. 24(a)(5)(A) ("The brief of the appellant shall contain ... [a] statement of the issues presented for review ... [and a] citation to the record showing that the issue was preserved in the trial court...."); *id.* 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented ... with citations to the ... parts of the record relied on."). Thus, we decline to consider Ms. Rapela's argument that deterioration in Mr. Green's and Mr. Kampros's relationship prior to Mr. Kampros's death prevents Mr. Green from now acting in the best interests of the beneficiaries.

## CONCLUSION

¶ 46 Section 706(2)(d) sets forth a three-prong test, each prong of which must be satisfied before a district court may remove a trustee. The district court held that Ms. Rapela failed to establish that "removal of [Mr. Green] best serves the interests of all of the beneficiaries." UTAH CODE § 75–7–706(2)(d). The district court properly concluded that removal of Mr. Green did not serve the beneficiaries' best interests. The district court had no obligation to defer to Ms. Rapela's characterization of the beneficiaries' best interests. Rather, the terms of the Trust defined their best interests. Next, the district court correctly held that Mr. Green's personal interests in the LLCs in which the Trust also owns interests does not constitute an impermissible conflict of interest because Mr. Kampros knew about Mr. Green's interests at the time he appointed

Mr. Green trustee. Finally, the district court permissibly compared Mr. Green's and Ms. Rapela's experience and qualifications when evaluating whether removal would serve the beneficiaries' best interests. Accordingly, we affirm.

Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Judge ORME joined.

Having recused himself, Justice LEE does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.