2014 UT App 269

## THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ANNA BLACKHAM AAGARD TRUST, ET AL.

W. KIM AAGARD,
Petitioner and Appellant,
*v.*
DIANE A. JORGENSEN,
Respondent and Appellee.

Opinion
No. 20120789-CA
Filed November 14, 2014

Sixth District Court, Manti Department
The Honorable Marvin D. Bagley
No. 113600013

Thomas A. Mecham, Alexander Dushku, and
Christopher S. Hill, Attorneys for Appellant

Clark R. Nielsen and Kathryn J. Steffey, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

VOROS, Judge:

¶ 1    This case involves a dispute among family members over
control of ranch land in Northern Utah. Diane A. Jorgensen

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah R.
Jud. Admin. 11-201(6).

raises sheep on the land. Her brother, W. Kim Aagard, is the sole manager of the Aagard family company and the sole trustee of more than a dozen Aagard family trusts. Kim sought court approval of a modification to the Company's operating agreement that would strip Diane of her power to veto any sale of land. The district court ruled that the modification would create a conflict of interest. Kim appeals. We reverse.

## BACKGROUND

### *The Ranch, the Trusts, and the Company*

¶ 2     The Aagard ranch covers nearly nine thousand acres of land spanning the border of northeast Utah and southwest Wyoming. To manage and transfer ownership of the ranch land, Welby and Opal Aagard created an LLC (Company) and a set of family trusts. Welby and Opal created trusts for themselves and for many family members, including their children (Kim and Diane), their children's spouses, and each of their grandchildren.[2] Welby and Opal originally served as co-trustees of the two trusts created for their own benefit. Kim served as sole trustee of the remaining trusts. When Welby and Opal died, Kim succeeded them as trustee of the Welby and Opal trusts.

¶ 3     The dispute between Kim and Diane hinges on the relationship between the Aagard trusts and the Company. The Company owns the Aagard ranch land. Kim owns an undivided interest in the Company as trustee of the Aagard trusts; he holds the balance of the interest in his personal capacity. Kim thus controls and manages the Company.

---

2. Because individuals discussed here have the same last name, and the trusts and Company all use that last name, we refer to these individuals and the parties by their first names for clarity.

*The Veto Provisions*

¶ 4    As originally drafted, both the Company's operating agreement (Operating Agreement) and the Aagard trust documents granted Kim and Diane veto power over property sales. The trusts' veto provision barred the trustee (now Kim) from selling or exchanging ranch-related property unless both Kim and Diane "consent[ed] in writing." In a similar provision, the Operating Agreement barred any sale of ranch-related property without the written consent of both Kim and Diane.[3]

¶ 5    Before their deaths, Welby and Opal modified the veto provision in the Aagard trust documents by deleting the provision granting Diane veto power. But Welby and Opal never modified the Operating Agreement's veto provision. Modification of that provision requires consent of ninety percent of the capital interests of the Company; counting interests Kim owns personally and interests he owns as trustee of the Aagard trusts, Kim owns 100 percent of the capital interests of the Company.

*Kim's Modification Petition*

¶ 6    After Welby and Opal died, Kim and Diane could not agree on how best to manage the Aagard ranch. Though he had not begun negotiating a sale, Kim considered selling the ranch and distributing the proceeds. Kim believed that he could negotiate a better sale if he first modified the Operating

---

3. The Operating Agreement also allows the manager to sell ranch property if the Company "has insufficient liquid assets to manage the ranch" or if the sale is intended to balance the interest held by Diane's and Kim's families. But only the veto provision is at issue here.

Agreement to remove the requirement that Diane consent. As trustee and individual owner of the Company, Kim could unilaterally modify the Operating Agreement. But Kim nevertheless sought the district court's approval before making the modification that would strip Diane of her veto power. Kim's modification petition acknowledged the possibility of a conflict of interest and asked the court to preapprove the modification.

¶ 7     The district court denied Kim's request, concluding that Kim's "individual ownership" of the Company "creates a presumption of being affected by a conflict of interest." The district court also concluded that Kim failed to prove "that he [would] not improperly derive some benefit as an individual from a sale" and "that the beneficiaries of the Trusts [would] be benefitted" by the proposed modification.

ISSUE ON APPEAL

¶ 8     Kim contends that the district court erred in concluding that the proposed modification is subject to a conflict of interest. First, Kim argues that section 75-7-802(3) of Utah's Uniform Trust Code does not apply to his proposed modification. Second, Kim argues that because the proposed modification does not sell any trust property or create a conflict of interest, section 75-7-802(2) of the Trust Code does not apply.

ANALYSIS

¶ 9     Kim maintains that his individual interest and the interests of the trust beneficiaries coincide rather than conflict. He argues that Diane's veto power granted in the Operating Agreement thus serves no purpose and creates "an impediment to the sale" of Company property. In Kim's view, because the modification benefits the Company and its member trusts, Kim's individual interests and the interests of the trusts "are

compatible." Further, Kim argues that neither section 75-7-802(3) nor section 75-7-802(2) applies to his proposed modification.

¶ 10    Diane responds that the proposed modification creates a conflict of interest and thus the Utah Uniform Trust Code renders the modification voidable under section 75-7-802(2). And even if the proposed modification is not voidable under section 75-7-802(2), Diane argues that Kim invited the district court to presume a conflict of interest under section 75-7-802(3).

¶ 11    The district court's denial of Kim's modification petition included both factual findings and legal conclusions. We will reverse a district court's factual findings only if they are clearly erroneous. *Swallow v. Jessop* (*In re United Effort Plan Trust*), 2013 UT 5, ¶ 17, 296 P.3d 742. By contrast, we afford no deference to the lower court's analysis of "abstract legal questions." *Id.* ¶ 18 (citation and internal quotation marks omitted). We thus review the district court's legal conclusions, including its interpretation of statutes, for correctness. *Id.*

¶ 12    The Trust Code requires a trustee to "administer the trust solely in the interests of the beneficiaries." Utah Code Ann. § 75-7-802(1) (LexisNexis Supp. 2011). "'[T]he term "interests of the beneficiaries" means the beneficial interests as provided in the terms of the trust, not as defined by the beneficiaries.'" *Rapela v. Green* (*In Re Estate of Kampros*), 2012 UT 57, ¶ 22, 289 P.3d 428 (emphasis omitted) (quoting Uniform Trust Code § 706 cmt.).

¶ 13    The parties agree that Kim must administer the trusts solely in the interests of the beneficiaries as required by section 802(1) of the Trust Code. The dispute arises from the next two subsections. We first consider section 802(3).

¶ 14    Section 802(3) presumes a conflict of interest if the trustee enters into a "sale, encumbrance, or other transaction" involving trust property with any one of four enumerated categories of third parties, including "a corporation or other person or

enterprise, in which the trustee, or a person that owns a significant interest in the trustee, has an interest that might affect the trustee's best judgment." Utah Code Ann. § 75-7-802(3)(d). Based at least in part on this section, the district court concluded that Kim's proposed modification created a conflict of interest. But on appeal, the parties agree that this section does not apply to the proposed modification.

¶ 15   Kim argues that section 802(3)(d) does not apply, because the proposed modification "is an agreement among the [Company]'s owners—the trustee of the Trusts and Kim individually—and not with the [Company] itself." Diane agrees: on appeal, she acknowledges that "Kim is correct . . . that the rebuttable presumption of section 75-7-802(3) does not apply." Because the parties agree that section 802(3) does not govern, we address it no further.[4]

---

4. Diane does argue that even if the district court erred in applying section 802(3), Kim "is precluded from challenging the district court's application . . . under the invited error doctrine."

The invited-error doctrine "prevents a party from taking advantage of an error committed at trial when that party led the trial court into committing the error." *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 12, 163 P.3d 615 (citation and internal quotation marks omitted). Kim did not lead the district court into its erroneous interpretation of section 802(3). Though Kim agreed that Diane "could . . . argue[]" that the modification created a conflict of interest, he insisted in the same breath that his "individual [post-modification] interests . . . appear to be perfectly aligned with those of the beneficiaries of the Trusts." Kim did not concede that his dual roles may affect his best judgment. He conceded only that Diane may raise that argument. That concession did not lead the district court into erroneously applying section 802(3), and the invited-error

(continued...)

¶ 16   Accordingly, the principal issue on appeal concerns section 802(2). Subject to enumerated exceptions, that section makes "voidable" a sale, encumbrance, or other transaction affected by a conflict between the trustee's fiduciary and personal interests:

> Subject to the rights of persons dealing with or assisting the trustee as provided in Section 75-7-1012, a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless:
>
>> (a) the transaction was authorized by the terms of the trust;
>> (b) the transaction was approved by the court;
>> . . . .

Utah Code Ann. § 75-7-802(2) (LexisNexis Supp. 2011). The district court concluded that this provision applied to the modification of the Operating Agreement as "a sale of trust property."

¶ 17   Kim contends that, for several reasons, section 802(2) does not prohibit the proposed modification to the Operating Agreement. First, he asserts that the modification of the

---

doctrine thus does not prevent Kim from arguing that error now on appeal.

Operating Agreement does not fit the statutory category of "a sale, encumbrance, or other transaction involving the investment or management of trust property." *See id.* He also asserts that the modification is not affected by a conflict between his fiduciary and personal interests.

¶ 18   Diane responds that "entering into an agreement, both individually and as trustee of the Trust to amend the [Company's] Operating Agreement to allow for an unrestricted sale of the Trust property qualifies as a 'transaction involving the investment or management of trust property.'" *See id.* She further maintains that "because the proposed amendment of the [Company's] Operating Agreement requires Kim to act in both his individual and fiduciary capacities, the amendment creates an irrebuttable presumption of a conflict of interest."

¶ 19   First, we agree with Kim that the modification of the Operating Agreement does not fit within the statutory category of a "sale, encumbrance, or other transaction involving the investment or management of trust property" and, thus, section 802(2) does not apply. *See id.* A "sale" involves the exchange of property or services for a price. Merriam-Webster Online, http://www.merriamwebster.com/dictionary/sale (last visited Oct. 8, 2014) (first definition: "the transfer of ownership of and title to property from one person to another for a price"); Black's Law Dictionary 1454 (9th ed. 2009) ("The transfer of property or title for a price."). Here, Kim seeks to modify the Operating Agreement, not transfer the trust property for a price. Thus, the proposed modification does not constitute a "sale." *See* Utah Code Ann. § 75-7-802(2).

¶ 20   Nor does the proposed modification of the Operating Agreement qualify as an "encumbrance." Our supreme court has defined an "encumbrance" as "any interest in a third person consistent with a title in fee in the grantee, if such outstanding interest injuriously affects the value of the property or constitutes a burden or limitation upon the rights of the fee title

holder." *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 44, 48 P.3d 895 (citations and internal quotation marks omitted). Because modifying the Operating Agreement would not create a property interest in a third person that injuriously affects the value of the property or burdens the Company's title, Kim's proposed modification does not constitute an "encumbrance."

¶ 21   Nor does the modification qualify as an "other transaction involving the investment or management of trust property." Utah Code Ann. § 75-7-802(2) (LexisNexis Supp. 2011). A "transaction" is defined as "a business deal: an occurrence in which goods, services, or money are passed from one person, account, etc., to another." Merriam-Webster Online, http://www.merriam-webster.com/dictionary/transaction (last visited Oct. 8, 2014); *see also* Macmillan Dictionary, http://www.macmillandictionary.com/us/dictionary/american/transaction (last visited Oct. 8, 2014) (first definition: "the action or process of buying or selling something"). Furthermore, where, as here, "a nonexhaustive enumeration of specific items is followed by a general term that suggests a class," the interpretive canon of ejusdem generis applies. *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 14, 284 P.3d 600. "Under the ejusdem generis canon, catchall elements of statutory lists may be understood as restricted to include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a contrary intent." *State v. Bagnes*, 2014 UT 4, ¶ 19, 322 P.3d 719 (emphasis, citation, and internal quotation marks omitted). Thus, to fit within the catchall category, the modification would have to qualify as a business deal similar to a sale or encumbrance. But the proposed modification to the Operating Agreement accomplishes nothing akin to transferring an interest in property or burdening the title to property; nor does it involve an exchange of property for a price. Therefore, Kim's proposed modification does not constitute a "transaction" within the meaning of the statute. And because the modification does not qualify as a "transaction," the Trust Code does not

prohibit the modification. On this ground alone, the judgment of the district court must be reversed.

¶ 22    However, we also note that the proposed modification is not "otherwise affected" by a conflict of interest. Utah Code Ann. § 75-7-802(2). Section 75-7-802(8), defining a trustee's duty of loyalty, does not prohibit the trustee from "acquiring an undivided interest in a trust asset in which the trustee, in any trust capacity, holds an undivided interest." *Id*. § 75-7-802(8)(g). Our supreme court has held that, under the Trust Code, a trustee "did not violate his duty of loyalty to the Trust's beneficiaries, even though he and the Trust both own interests in [certain] LLCs." *Rapela v. Green (In re Estate of Kampros)*, 2012 UT 57, ¶ 28, 289 P.3d 428. Thus, the Utah Trust Code "expressly permits [a trustee] to retain the Trust's LLC interests until, in his judgment, they should be disposed of, even though he owns a personal interest in them." *Id.* (citing Utah Code Ann. § 75-7-802(8)(f)).

¶ 23    A conflict of interest exists when the interests in question are "inconsistent" or "incompatible." *Angel Investors, LLC v. Garrity*, 2009 UT 40, ¶ 30, 216 P.3d 944; *In re S.A.*, 2001 UT App 308, ¶ 25, 37 P.3d 1172. Diane hypothesizes several scenarios in which Kim's interest as trustee and his personal interest might be inconsistent. For example, "if Kim were in personal financial distress and in need of cash quickly," she argues, "he could direct the sale of the Ranch Land at a time when its value is suppressed." Or Kim could sell ranch property "only to generate cash to pay Kim's manager salary, a salary set and determined solely by Kim." But these scenarios are hypothetical; nothing in the record suggests that Kim in fact contemplates selling the ranch land at fire-sale prices. Such hypothetical conflicts are always conceivable when a trustee holds undivided interests in an LLC both as trustee and on his own account, yet holding such undivided interests does not breach a trustee's duty of loyalty. *See* Utah Code Ann. § 75-7-802(8)(g); *Rapela*, 2012 UT 57, ¶ 28.

¶ 24    Furthermore, if a hypothetical conflict were to materialize, Kim's statutory duty of loyalty would protect the beneficiaries. As Kim acknowledges, even after the modification he will "still need to conduct his affairs according to the fiduciary duties that he owes to Diane and all of the Trusts' beneficiaries." *See* Utah Code Ann. § 75-7-801. Under the Trust Code, Kim owes a fiduciary duty to the beneficiaries, and he acknowledges that the Trust Code grants the beneficiaries "an avenue to seek redress" if they object "to the manner or terms of a sale of the Ranch Land." But because Diane is not a trustee, the Trust Code offers the beneficiaries no similar protection against Diane's veto. The Trust Code would not, for example, prevent her from exercising that veto to block a sale favored by all the other beneficiaries. Consequently, Kim's proposed removal of Diane's veto power from the Operating Agreement likely grants the remaining beneficiaries greater, not less, protection.

CONCLUSION

¶ 25    In sum, we conclude that Kim's proposed modification to the Operating Agreement does not qualify as a sale, encumbrance, or similar transaction and, in any event, creates no inconsistency or incompatibility between his personal and fiduciary interests. Accordingly, the district court's order is reversed and the case remanded for further proceedings consistent with this opinion.[5]

_____

5. Because we conclude that the proposed modification does not run afoul of the Trust Code, we do not reach the parties' second set of arguments concerning Welby's and Opal's reasons for declining to modify the Operating Agreement and their intent to have Kim modify the agreement after their deaths.