**In re Donald L. McKINNEY, Deceased.**

**Appeal of Jane D. McKinney.**

**In re Jane McKinney Descendants' Trust.**

**Appeal of Jane D. McKinney.**

Superior Court of Pennsylvania.

Argued Oct. 30, 2012.
Filed May 21, 2013.

Charles J. Avalli and Lorraine W. Mervan, Pittsburgh, for appellant.

Kenneth E. Lewis, Pittsburgh, for PNC Bank, participating party.

BEFORE: MUSMANNO, J., WECHT, J.; and COLVILLE, J.*

OPINION BY WECHT, J.:

We are called upon here to assess the interplay between the contemporary world of corporate banking and Pennsylvania's law of trusts.

In this case, the settlors established trusts that lacked portability clauses.[1] Nonetheless, Pennsylvania's Probate, Estates, and Fiduciaries Code ["PEF Code"][2] was amended in 2006 to add a "no-fault" provision allowing a trustee to be changed due to "substantial change of circumstances." 20 Pa.C.S.A. § 766(b)(4). Here, the question arises whether a family's movement over time from northwestern Pennsylvania to the Tidewater region of Virginia, coupled with the fact that the original trustee institution has gone through approximately six corporate mergers leading to entirely different bank officers involved in administering the trusts, represents a change of circumstances substantial enough to come within the no-fault statutory provisions.[3]

---

* Retired Senior Judge assigned to the Superior Court.

1. A portability clause is an electable provision in a trust document that permits a settlor or beneficiary to change the corporate fiduciary named in a trust, causing the trust to be "portable" from one trustee to another. When circumstances arise that are not explicitly considered by the trust document, such as when beneficiaries request the removal of a trustee notwithstanding the trust document's lack of a portability clause, Pennsylvania's Probate, Estates, and Fiduciaries Code provides a set of default rules that will govern the proceedings. *See* 20 Pa.C.S.A. § 7705(a) (Except as provided in subsection (b) [mandatory rules], the provisions of a trust instrument prevail over any contrary provisions of this chapter).

2. 20 Pa.C.S.A. §§ 101, *et. seq.*

3. At one time, trusts named individuals to act as trustees, but, in recent years, settlors have begun to name large corporate institutions. Over time, corporate fiduciaries often undergo significant restructuring that affects the administration of the trust, in ways unforeseeable to settlors. This can create tension between the traditional common law approach of giving effect to the settlor's intent (particularly in light of the reality that the named corporate fiduciary often eventually ceases to exist) and the beneficiaries' desire to update trust administration when such updating is in the beneficiaries' best interests. This discussion has been the subject of recent legal debate:

> In short term trusts, the chances are good that a corporate or institutional trustee will undergo changes that will affect the administration of the trust. In a dynasty trust, it is inevitable. Individuals die or become incapacitated. Banks consolidate, trust officers change jobs, and investment performance suffers or fees rise to unacceptable levels. Any one of these occurrences alone might not justify a for-cause termination, despite a desire to make a change. However, loyalty is to individuals, not institutions, and the flexibility to move trust administration to a favored trust officer's new institution without protracted litigation or even an awkward conversation with the existing trustee is an attractive option if that option is held by the right person. In the eyes of the settlor, that person will always be the settlor. In a dynasty trust, the proper person to hold the power will also include designees so the power can be exercisable after the death or disability of the settlor. Powers to Replace Trustees: A Key Element of (And Risk to) Dynasty Trusts, 35 Estate Planning, 22–23. Consider also:
>
> "Because of the discretion normally granted to a trustee, the settlor's confidence in the judgment of the particular person whom the settlor selected to act as trustee is entitled to considerable weight." This basis for prohibiting beneficiaries from removing the trustee, except for cause, has been the subject of considerable criticism when the trustee is a professional, corporate trustee. Because today's banking environment is characterized by increasingly large banks, mergers and other consolida-

Following careful review, we conclude that the beneficiaries were within their rights to petition for removal of the trustee. Accordingly, we reverse the judgment of the trial court and remand with the instruction that the petition for the removal of PNC Bank as trustee be granted, pending approval of Appellant's proposed successor trustee. In light of our ruling, we also reverse the trial court's judgment authorizing the reimbursement of PNC's legal fees associated with contesting the removal.

The trial court outlined the history of these trusts, chronicling the movement of Appellant's family and the merger of numerous banks that resulted in the current trustee:

> Before the Court are two petitions, both seeking the removal of PNC Bank, National Association, Trustee (hereinafter "PNC") as trustee of two separate trusts referred to throughout this Memorandum as the "Testamentary Trust" and the "Descendants' Trust." The trust assets are considerable.

> The Testamentary Trust appears in the Will of the late Donald L. McKinney, executed in the early part of 1964. This Testamentary Trust came into existence upon the death of Donald L. McKinney in 1971. The Pennsylvania Bank and Trust Company ["Bank and Trust"] became the trustee under the terms of the Will. The late Donald L. McKinney's daughter, Jane D. McKinney (hereinafter "Petitioner")[,] was the named primary beneficiary entitled to the income generated from the trust for her life. The secondary or residuary beneficiaries are her children. She has four adult children, Jane D. Cullipher, Catherine Morrison, David Fletcher Currier III, and Edward McKinney Currier.

> The Jane McKinney Descendants' Trust, *i.e.* the Descendants' Trust, was created by Petitioner's mother, Katherine Dillen McKinney Brawner (hereinafter "Katherine McKinney"), by trust instrument dated October 17, 1989. Katherine McKinney was the wife of Donald L. McKinney. The Descendants' Trust names Pennbank as the Trustee. Pennbank was a successor bank to [Bank and Trust]. Thus, as of October 17, 1989, Pennbank administered both the Descendants' Trust and the Testamentary Trust, both of which name Petitioner as the primary beneficiary, with the sec-

---

tions, and transfers of trust business, critics of the common-law rules assert that "it is not material to the purpose of the trust for a particular corporate trustee to serve as trustee when another corporate trustee could perform the same function." The traditional, restrictive common law rules on trustee removal have also been under attack by beneficiary organizations whose overriding principle is that trusts are for the benefit of their beneficiaries.

Perhaps in response to such factors, the UTC's default rules have significantly expanded the grounds for changing trustees. First and most important, if the qualified beneficiaries unanimously request that the trustee be removed, section 706(b)(4) authorizes the court to do so if it "finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available." When the settlor selects an individual trustee, presumably the choice of trustee usually will be material to the settlor's purposes for the trust. When a corporate trustee is serving, however, beneficiaries presumably will more often be able to show that removal of the corporate trustee would not be inconsistent with a material purpose of the trust, particularly if it is the successor through court appointment, merger or other consolidation of another corporate trustee designated by the settlor. Alan Newman, *The Intention of the Settlor Under the Uniform Trust Code: Whose Property Is It, Anyway?*, 38 Akron L.Rev. 649, 695–97 (2005) (footnotes omitted).

ondary or residuary beneficiaries being Petitioner's children.

Petitioner seeks the removal of PNC Bank, the trustee of both trusts. Petitioner requests that the Court approve the appointment of SunTrust Delaware Trust Company (hereinafter "SunTrust Delaware") as the successor trustee. Petitioner alleges that there has been a substantial change in circumstances that warrants a change of trustees and that PNC Bank has failed to properly service the needs of the beneficiaries. She opposes the payment of PNC Bank's attorneys fees from the trusts in defending against these removal petitions. She notes that there were two other trusts in which PNC Bank was trustee, both of which contained portability clauses, and that PNC did not object to the appointment of SunTrust Delaware as the successor trustee of those trusts. Petitioner contends that the appointment of SunTrust Delaware will enhance access by the beneficiaries to the trustee since all of the beneficiaries reside in Virginia, and will aid in the comprehensive financial planning and estate management needs of the primary and secondary beneficiaries. Petitioner asserts that having one financial institution rather than two, PNC and SunTrust Delaware, would make it easier to plan the financial needs of the beneficiaries.

PNC filed an answer to both petitions, contending that there has not been a substantial change in circumstances to warrant removal and vigorously objects to claims that it has not properly serviced these trusts. PNC also challenges the suitability of SunTrust Delaware to serve as the successor trustee and claims the right to have its attorneys fees paid in defending against the petitions.

\* \* \*

In support of the substantial change in circumstances argument, Petitioner points to the several different trustees that have administered the trusts over the last 40 years by way of mergers and acquisitions. The original named trustee of the Testamentary Trust, [Bank and Trust], later became Pennbank. Pennbank served as trustee of both the Testamentary Trust and the Descendants' Trust for a period before merging with and becoming [Integra National Bank North.] On May 24, 1995, Integra Bank North merged with other Integra Banks and became Integra Bank. A year later, Integra Bank converted to a national banking association and changed its name to National City Bank of Pennsylvania. National City Bank of Pennsylvania then merged with other National City banks across the country becoming National City Bank. Through National City Corporation's merger with PNC Bank Financial Services Group, Inc., National City Bank became a wholly owned subsidiary of PNC Bank Financial Services Group, Inc. The trust operation[s] of PNC Bank and National City Bank remained separate until the bank operations merged on November 6, 2009[,] at which point PNC Bank became the trustee of the two trusts.

Petitioner has not resided in Pennsylvania since 1964, when she moved to New York to marry. She has resided primarily in the Hampton Roads area of Virginia, which is also the area in which her four children reside. Although her children have not joined in these petitions, they support Petitioner.[4] Petitioner

---

4. The trial court states incorrectly that Appellant's children did not join in these petitions. In fact, Appellant's children joined in the petitions to remove PNC as trustee. *See* Joinders of Jane D. Cullipher, Catherine Morrison, Edward McKinney Currier, and David Fletcher

contends that her financial planning needs and those of her children have changed substantially over the years and that these changes merit the appointment of a successor trustee.

Trial Court Opinion ["T.C.O."], 1/9/12, at 1–4 (citations to exhibits omitted).

■ The trial court denied Appellant's petition, and awarded PNC attorneys' fees.[5] Appellant filed a notice of appeal. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. The trial court entered an order directing our attention to its January 9, 2012 memorandum and order in lieu of a Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues for our review:

1) Whether the trial court erred and abused its discretion by failing to find that petitioner proved by clear and convincing evidence that PNC Bank should be removed as trustee of the two trusts and SunTrust appointed as successor trustee under 20 Pa.C.S.A. § 7766?

   a. The trial Court erred and abused its discretion in failing to find that the interests of the beneficiaries would be best served by removal of PNC Bank as trustee and appointment of SunTrust as successor trustee.

   b. The trial court erred and abused its discretion in finding that removal of PNC Bank and appointment of SunTrust as successor trustee is inconsistent with a material purpose of the trust.

   c. The trial court erred and abused its discretion in failing to find that substantial changes in circumstances have occurred which warrant removal of PNC Bank as trustee and appointment of SunTrust as successor trustee.

2) Whether the trial court erred and abused its discretion in awarding counsel fees to PNC Bank?

Appellant's Brief at [i], 5.

We begin our analysis with a recitation of our standard of review in an appeal of an Orphan's Court decree:

> [We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Brown*, 30 A.3d 1200, 1206 (Pa.Super.2011) (citing *In re Estate of Miller*, 18 A.3d 1163, 1169 (Pa.Super.2011) (*en banc* )).

---

Currier III, December 8, 2010. Therefore, all of the beneficiaries of the Testamentary Trust, and all of the adult beneficiaries of the Descendants' trust, request removal.

**5.** It is a well-established principle that a "trustee who successfully defends an action for removal is entitled to costs out of the trust estate." *In re Francis Edward McGillick Foundation*, 406 Pa.Super. 249, 594 A.2d 322, 331 (1991), *aff'd in part, rev'd in part on other grounds*, 537 Pa. 194, 642 A.2d 467 (1994); *see also In re Estate of Browarsky*, 437 Pa. 282, 263 A.2d 365 (1970) (holding that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance to pay counsel fees and necessary expenditures from the estate).

This is the first instance in which we have been asked to interpret and apply Section 7766(b)(4), a provision which permits the removal of a trustee due to a substantial change in circumstances. Prior to the General Assembly's adoption of Chapter 77 of the PEF Code, which contains the provision at issue, a person seeking removal was required to show fault or negligence on the part of the trustee. *See* 20 Pa.C.S.A. § 7121, *deleted by* 2006, July 7, P.L. 625, No. 98, § 4. Fault grounds for removal are codified in the current version of the PEF Code at 20 Pa.C.S.A. § 7766(b)(1)-(3), and a trustee's failure adequately to administer the trust remains the main basis for trustee removal.

Section 7766(b)(4), which provides for removal when a substantial change in circumstances has occurred, is the other possible basis for removal. However, a substantial change in circumstances alone will not suffice. One seeking no-fault removal of a trustee also must show the existence of additional requirements codified at Section 7766(b). Section 7766(b)(4) provides:

> § 7766. **Removal of trustee—UTC** [6] **706**
>
> (b) When court may remove trustee.— The court may remove a trustee if it finds that removal of the trustee best serves the interests of the beneficiaries of the trust and is not inconsistent with a material purpose of the trust, a suitable cotrustee or successor trustee is available and:
>
> \*    \*    \*

> (4) there has been a substantial change of circumstances. A corporate reorganization of an institutional trustee, including a plan of merger or consolidation, is not itself a substantial change of circumstances.

20 Pa.C.S.A. § 7766(b)(4).

Therefore, a person seeking trustee removal pursuant to Section 7766(b)(4) must show by clear and convincing evidence that: (1) the removal serves the beneficiaries' best interests; (2) the removal is not inconsistent with a material purpose of the trust; (3) a suitable successor trustee is available; and (4) a substantial change in circumstances has occurred. *Id.; see In re Estate of Mumma*, 41 A.3d 41, 50 (Pa.Super.2012), *reargument denied* (Apr. 26, 2012) (removal of trustee requires showing of "clear and convincing" evidence). If all of the requirements are met, then the trial court, in its discretion, "may remove" the trustee through an exercise of its discretion. 20 Pa.C.S.A. § 7766(b).

The trial court here found that Appellant failed to present clear and convincing evidence sufficient to establish all of the requirements for removal under this no-fault statutory provision.[7] For the reasons that follow, we conclude that the trial court's factual findings are unsupported by the record and that the trial court committed errors of law that require reversal of the trial court's decree.

We begin by identifying the analysis required in a cause of action pursuant to

---

**6.** Uniform Trust Code.

**7.** Appellant asserts that the trial court found that Appellant had presented evidence sufficient to establish that SunTrust Delaware was a suitable successor trustee. Appellant's Brief at 16 n. 5. However, the trial court made no such affirmative finding. Rather, the trial court declined to find that SunTrust Delaware was **not** suitable. T.C.O. at 12–13. The trial court expressed reservations regard-

ing SunTrust Delaware's experience with Pennsylvania trust law. *Id.* Because the trial court found that Appellant failed to meet all of the other requirements of Section 7766(b)(4), it was not required to make a specific finding as to the availability of a suitable successor. On remand, the trial court will be required to determine SunTrust Delaware's suitability as a successor trustee.

Section 7766(b)(4). As always, the interpretation of a statute is a question of law, and our primary objective is to give effect to the intent of the General Assembly. *Tritt v. Cortes,* 578 Pa. 317, 851 A.2d 903, 904 (2004) (citing 1 Pa.C.S.A. § 1921(a)). "In this regard, the plain language of a statute is the foremost indication of legislative intent. When there is an interpretation available that gives effect to all of the statute's phrases and does not lead to an absurd result, that interpretation must prevail." *Id.* (citations omitted). In any trustee removal action, the plain language of the statute requires that the petitioner show that removal "best serves the interests of the beneficiaries of the trust." 20 Pa.C.S.A. § 7766(b). However, the statute itself sheds no light upon how the interests of the beneficiaries are to be defined. As this is a recently adopted provision within Pennsylvania, there is a dearth of case law to which we can refer for interpretive guidance.

Of some use is the prefatory comment to Chapter 77 of the PEF Code, which states that Chapter 77 is based upon the Uniform Trust Code ["UTC"]. 20 Pa.C.S.A., Ch. 77, Refs. & Annos. (2005). However, not all sections of the UTC were adopted into the PEF Code. *Id.* Further, several PEF Code provisions, while based upon the UTC, were substantially rewritten by our General Assembly. *Id.* Sections of the chapter that are substantially similar to their equivalent provisions contained in the UTC are indicated as such by a reference to the relevant UTC section number in the PEF Code section headings. *Id.* For these provisions, the General Assembly has indicated that "the UTC comments are applicable to the extent of similarity." *Id.* Section 7766 is marked as a section that was based upon the UTC, to which the UTC comments are applicable.[8, 9] *See* 20 Pa.C.S.A. § 7766. The commentary of the UTC in regard to the definition of best interests states: "The term 'interests of the beneficiaries' means the beneficial interests as provided in the terms of the trust, not as defined by the beneficiaries." UTC § 706, Commentary (2000). While this makes clear that the "best interests" are to be defined according to the trust terms and not according to the subjective will of the beneficiaries, the manner in which courts are to utilize the terms of the trust in determining the best interests of the beneficiaries remains unclear. The language does suggest that the settlor's intent is paramount in this analysis, and courts traditionally strive to give effect to that intent when interpreting a trust document. *See In re Estate of Warden,* 2 A.3d 565, 572 (Pa.Super.2010) ("The settled law in Pennsylvania is that 'the pole star in every trust ... is the settlor's ... intent and that intent must prevail.' ").[10]

---

**8.** As stated, only the comments related to the sections of the UTC that are substantially similar to the corresponding sections of the PEF code are relevant. Section 7766(b)(4) is substantially similar to the UTC except that the UTC language permitting removal of a trustee when all of the beneficiaries agree on the removal was not adopted. *See* 20 Pa.C.S.A. § 7766(b)(4); UTC § 706(b)(4); *see also* 20 Pa.C.S.A. § 7766, Jt. St. Govt. Comm. Comment (2005) (indicating that, while earlier versions of this chapter included this concept in Section 7766(b)(5), the Senate Judiciary Committee ultimately voted to remove paragraph 5). Thus, the UTC commentary related to removal of a trustee when all of the beneficiaries agree to the removal is not relevant to our analysis.

**9.** The commentary to Section 7766 states outright that "UTC § 706 is reorganized and largely adopted in substance." 20 Pa.C.S.A. § 7766, Jt. St. Govt. Comm. Comment (2005). Further, the commentary for UTC § 706 is reproduced below Section 7766 under the heading: Uniform Law Comment.

**10.** Perhaps the prudent drafter of a trust should specifically define the beneficiaries' best interests as the settlor sees them in the

■ What is not required of Appellant under a cause of action pursuant to Section 7766(b)(4), but was considered by the trial court in this case, is a showing that the current trustee has administered the trust in a way that "undermined" or "harmed" the beneficiaries' interests. T.C.O. at 8. Such a showing would be relevant under the previous version of this section of the PEF Code or under the other subsections of 7766(b)(1)-(3). However, to require a showing of fault at Section 7766(b) would undermine the intent of the General Assembly in creating a no-fault provision for trustee removal at Section 7766(b)(4).[11, 12] Indeed, the commentary to Section (b) states that "A trustee may be removed for untoward action, such as for a serious breach of trust, but the section is not so limited." UTC § 706, Commentary (2000). The trial court erred in its analysis under Section 7766(b)(4) by relying upon a finding that Appellant failed to show that PNC's mismanagement of the trust had harmed the beneficiaries' interests.

Having ruled out one possible interpretation of what is meant by "best serves the interests of the beneficiaries of the trust," we are left to determine what analysis is necessary under this requirement. Because Section 7766 is based upon the UTC's equivalent provision, we may review how our sister states have interpreted their trustee removal laws that are also based upon the UTC and, therefore, are substantially similar to our own. Connecticut, Missouri, and Utah courts all have been presented with cases requiring their courts to define beneficiaries' best interests in the context of no-fault trustee removal.[13] *See Rapela v. Green,* 289 P.3d 428 (Utah 2012); *Davis v. U.S. Bank Nat. Ass'n,* 243 S.W.3d 425 (Mo.Ct.App.2007); *In re Fleet Nat. Bank's Appeal from Probate,* 267 Conn. 229, 837 A.2d 785 (2004); *Fleet Bank v. Foote,* No. CV020087512S, 2003 WL 22962488 (Conn.Super.Ct. Dec. 2, 2003).[14] These courts uniformly have found that implicit in the best interests

event of a petition for no-fault trustee removal. However, we of course lack such guidance in the case at hand, and therefore must proceed without actual elucidation from the settlor. Indeed, without further elucidation from the settlor, it would seem that the only interests provided for in the trust are the maximization of the income that the trust generates for the beneficiaries and the remainder interests. However, when courts are presented with two competent trustees, both capable of administering the trust to achieve maximum financial growth, without factoring any other interests in the analysis, courts would be at a loss as to how to determine which trustee **best** serves the beneficiaries' interests.

11. We acknowledge that a consideration of fault may be pertinent to a Section 7766(b) analysis when a beneficiary seeks removal under Section 7766(b)(1)-(3).

12. It is well-accepted that the UTC expanded the circumstances in which trustee removal will be granted. *See, e.g.,* Newman, *supra* note 3, at 694 ("[T]he UTC's default rules

increase the ability of beneficiaries to change trustees.").

13. These states all have enacted trust laws that adopt a more complete version of the UTC, in that they all permit removal of a trustee where there has been a substantial change in circumstances **or** when all of the beneficiaries request removal. However, we do not believe that this has any bearing on our analysis and interpretation of the provisions in those states' statutes that are identical to Pennsylvania's. Therefore, although we review those states' cases where the individuals seeking no-fault removal are acting pursuant to the provision not adopted by Pennsylvania, we consider those authorities only insofar as, and to the extent that, they interpret provisions of statutes identical to our own.

14. PNC argues that *Foote, supra,* a case cited and relied upon by Appellants, was improperly cited by Appellants because it was an unpublished decision. PNC cites our internal operating procedures at IOP § 65.37, which states that unpublished memorandum deci-

analysis is a comparison between the current trustee and the proposed successor trustee. *Rapela,* 289 P.3d at 435 ("[A] district court may permissibly compare the characteristics of an existing trustee with potential successor trustees when applying the best interests test."); *Davis,* 243 S.W.3d at 430 (comparing location, tax consequences, personal understanding of trusts involved, and cost of administrative fees of current trustee and proposed successor trustee); *Fleet Nat. Bank,* 837 A.2d at 797 ("[T]he focus of subdivision (4) is upon whether there is another entity that, for some reason, may perform better or provide different and more desirable benefits as administrator, or is otherwise better suited to serve as fiduciary for a particular trust.").

In *Rapela,* the Utah Supreme Court permitted the removal of a trustee where the successor trustee was more experienced with the trust at issue and was more qualified. 89 P.3d at 435. The *Davis* Court permitted removal of a trustee because the successor trustee was a thirty-minute drive from the beneficiaries' homes; the successor trustee was based in the beneficiaries' state enabling avoidance of out-of-state trust income tax; the successor trustee had a "complete understanding of" the beneficiaries' "unique personal financial situation"; and the successor trustee charged lower fees. *Davis,* 243 S.W.3d at 430. In *Fleet Nat. Bank,* the probate court found that the removal of the trustee in question was in the best interests of the beneficiaries because:

(a) [the successor trustee] already administered other trusts for the benefit of the [beneficiaries] and to centralize management in one fiduciary would increase convenience and efficiency, (b) the services offered by [the successor trustee] were more personalized than those of the [trustee], and (c) the fees charged by [the successor trustee] were lower than those imposed by the [trustee].

837 A.2d at 788. Similarly, in *Foote,* the probate court found that the removal of a trustee best served the beneficiaries' interests, because the removal allowed the beneficiaries to follow bank personnel, who had become the beneficiaries' trusted advisors, to a new corporate trustee. *Foote,* 2003 WL 22962488, at *3.

■ We are persuaded by the case law from our sister jurisdictions. We conclude that courts should consider the following factors when determining whether a current trustee or a proposed successor trustee best serves the interests of the beneficiaries: personalization of service; cost of administration; convenience to the beneficiaries; efficiency of service; personal knowledge of trusts' and beneficiaries' financial situations; location of trustee as it affects trust income tax; experience; qualifications; personal relationship with beneficiaries; settlor's intent as expressed in the trust document; and any other material circumstances. *Rapela,* 289 P.3d at 435–36; *Davis,* 243 S.W.3d at 430–31; *Fleet Nat. Bank,* 837 A.2d at 797 n. 17; *Foote,* 2003 WL 22962488, at *3. No one factor in this nonexhaustive list will out-

sions "shall not be relied upon or cited by a Court or party" except in discrete circumstances not applicable to this case. IOP Section 65.37 contemplates our own Court's memorandum decisions, a category that, of course, does not include *Foote.* We do not "rely" upon *Foote;* rather, we consider it as we would any other case from a different jurisdiction, as potentially persuasive authori-

ty that, in any event, lacks precedential effect. *See Branham v. Rohm & Haas Co.,* 19 A.3d 1094, 1107 (Pa.Super.2011) *appeal denied,* 615 Pa. 771, 42 A.3d 289 (2012). Further, we observe that a published case from that jurisdiction's highest court, *In re Fleet National Bank, supra,* echoes much of the analysis contained in *Foote.*

weigh the others. Rather, the trial court is to consider these factors if the parties present evidence thereof, on a case-by-case basis.

■ Appellant raises several of these factors in asserting that SunTrust Delaware, not PNC, will best serve the beneficiaries' interests. Appellant explains that, while her father and mother, each a settlor of one of the two trusts in question, had an ongoing relationship with Bank and Trust (the original trustee designated in the 1964 will), that company no longer exists. Appellant never attempted to remove the trustee previously because, although the trustee changed approximately six times as a result of bank mergers, the individuals with whom she worked at the banks remained the same. Those bank officers knew Appellant's family members and their history, resulting in personalized administration of the trusts. As a result of the most recent merger, in which PNC assumed the role of trustee, those bank personnel no longer administer the trusts. They have been replaced by individuals whom Appellant asserts are "ineffective and unresponsive." Appellant's Brief at 12–13. Appellant wishes to consolidate her legacy banking with SunTrust Delaware, not only because SunTrust Delaware currently serves as trustee for four other family trusts, but also because SunTrust Delaware is based in Virginia along with Appellant and all of the other beneficiaries. While PNC has offices in Virginia, only one of those offices is capable of performing trust administration, and that office is in northern Virginia, not in the Tidewater area. Appellant asserts that consolidating the family wealth at SunTrust Delaware will allow for more efficient administration of the assets and allow the banking personnel, along with her investment advisor who also is based in Virginia, easy access to one another.

PNC presents little countervailing evidence. PNC asserts that SunTrust Delaware lacks experience in administering trusts governed by Pennsylvania law. We find this argument unconvincing. Pennsylvania trust law now poses no distinct peculiarities setting it apart from that of other states, and requiring highly specialized and localized knowledge. PNC also claims that Appellant's "friendly" relationship with SunTrust Delaware would allow Appellant to assert influence over SunTrust Delaware, such that SunTrust Delaware would be inclined to administer the trusts with the goal of achieving Appellant's interests at the expense of the settlors' wishes. In particular, PNC asserts that SunTrust Delaware would be more likely to terminate one of the trusts, which PNC declined to do. The trial court found this argument convincing. However, such a finding is speculative and is unsupported by the record. Lisa Wilkins, SunTrust Delaware Chief Operating Officer, testified that the beneficiaries had never proposed, and SunTrust Delaware has never contemplated, the possibility of terminating the trusts. Notes of Testimony ["N.T."], 8/18/11, at 120–21. We find that the trial court erred in making a contrary factual finding, as it is unsupported by the record.

We are persuaded that the beneficiaries' best interests will be served by replacing PNC in the role of trustee with SunTrust Delaware. SunTrust Delaware offers the beneficiaries personalized service, greater convenience due to their co-location in Virginia, more efficient service due to SunTrust Delaware's administration of several family trusts, and greater personal knowledge of the overall financial service needs of the beneficiaries. In summary, the trial court committed legal error in requiring Appellant to show fault on PNC's part and in basing its ruling upon a factual finding that was unsupported by the record. Ap-

pellant has demonstrated by clear and convincing evidence that removal is in the beneficiaries' best interests.

■ Next, Appellant asserts that the trial court erred in finding that the removal of PNC as trustee is inconsistent with a material purpose of the trust. In this analysis, we must determine whether the designation of the trustee is a material purpose of the trust. *See* UTC § 706, Commentary (2000) ("Subsection (b)(4) of this section similarly allows the qualified beneficiaries to request removal of the trustee if the designation of the trustee was not a material purpose of the trust."). The commentary pertaining to this analysis states:

It has traditionally been more difficult to remove a trustee named by the settlor than a trustee named by the court, particularly if the settlor at the time of the appointment was aware of the trustee's failings. Because of the discretion normally granted to a trustee, the settlor's confidence in the judgment of the particular person whom the settlor selected to act as trustee is entitled to considerable weight. This deference to the settlor's choice can weaken or dissolve if a substantial change in the trustee's circumstances occurs.

UTC § 706, Commentary (2000) (internal citation omitted). We also have emphasized that, where a settlor personally chooses an individual to act as trustee, the selection "represents an expression of trust and confidence, and removal of a personally chosen individual is thus considered to be a drastic remedy." *Mumma,* 41 A.3d at 50 (citation and quotation marks omitted).

In this case, the settlors did not personally choose an individual to act as trustee. Rather, the settlors chose a particular bank: Bank and Trust. Indeed, Appellant's ancestors started Titusville Trust company, which later became Bank and Trust. N.T. at 27–28. Appellant's family had strong ties to Bank and Trust, with relatives serving on Bank and Trust's Board of Directors. *Id.* Later generations have not been involved in the banking industry. As time passed, Bank and Trust underwent a series of mergers, the result being that the named trustee, Bank and Trust, no longer exists. The trustee has changed approximately six times. With each merger, the trusts became farther removed from the original trustee. The process of attenuation is complete.

The trial court was persuaded that a material purpose of the trusts was that they be governed by a Pennsylvania institution. The trial court noted that Descendants' Trust expressly provided that any successor to PennBank, the name that Bank and Trust adopted in 1980, through merger or acquisition, would replace PennBank as trustee. *See* Descendants' Trust at VI–2 ¶ (C). The Testamentary Trust did not name a successor trustee in the event that Bank and Trust merged with or was acquired by another bank. The trial court found that both settlors would have been aware that banks often undergo mergers and acquisitions. T.C.O. at 11. In light of this assumed knowledge, the trial court concluded: "If either had intended that the trustee of these trusts would be subject to removal for the mere convenience of the then living and known beneficiaries at any given time, they would have authorized such action." *Id.*

To read the absence of an express intention to permit portability as disallowing portability would render Section 7766(b)(4) a nullity. Had the trusts contained portability clauses, Appellant would not be in court. She simply would have exercised the clause. Applying the same logic, we could conclude that, had the settlors desired that the trusts be administered by

Pennsylvania banks, they would have included that requirement in the trusts explicitly. Indeed, the settlors did specify that the trusts must be governed by Pennsylvania law, but did not indicate that the trustees must be Pennsylvania banks. In fact, from 2006 to 2009, when the settlor of the Descendants' Trust was still alive, the trust was being managed by National City Bank, an Ohio bank.

While the settlors may have desired that Bank and Trust serve as trustee, when that bank dissolved, that desire could no longer be fulfilled. We cannot conclude that PNC's role as trustee now serves a purpose material to the trusts. There is no evidence that the settlors ever even contemplated PNC serving as trustee. When the chosen trustee no longer exists, the only material purpose that can be served through designating a trustee is that the trustee effectively administers the trusts. Where both the trustee and the proposed successor trustee are qualified to serve that purpose, we will not find that removal violates a material purpose of the trust. Appellant has sustained her burden of proof in establishing that removal of PNC as trustee is not inconsistent with a material purpose of the trusts. The trial court erred in finding otherwise.

■ Our final line of inquiry is whether Appellant has established that a substantial change in circumstances has occurred. It is clear that merger or corporate reor-

ganization alone does not constitute a change in circumstances:

> Changed circumstances justifying removal of a trustee might include a substantial change in the character of the service or location of the trustee. A corporate reorganization of an institutional trustee is not itself a change of circumstances if it does not affect the service provided the individual trust account.

UTC § 706, Commentary (2000). While legal commentators have suggested what might constitute a substantial change in circumstances, we have found no case law that has defined the focus of this analysis.[15] After careful consideration, we find under the circumstances of this case that a string of mergers over several years, resulting in the loss of trusted bank personnel, coupled with the movement of a family from Pennsylvania to Virginia, constitutes a substantial change in circumstances.

Upon the appointment of PNC as successor trustee, the character of service provided to Appellant changed. Appellant had become familiar with three key bank officers, with whom she had worked for many years and whom she trusted to administer the trusts properly. After the most recent merger, all three of those individuals ceased to work at PNC. N.T. at 155. The transition to new bank personnel marked a change in the character of banking services that Appellant had come to expect. Appellant testified that, from Sep-

---

**15.** The cases from our sister jurisdictions discussed *supra* all proceeded under the provision of the UTC not adopted in our PEF code, to wit, removal at the request of all beneficiaries. Without guidance from other jurisdictions' case law, we find the following suggested consideration informative:

> But the drafters of the UTC also concluded that in situations where the personal link between the settlor and the trustee has been broken, the emphasis should turn to wheth-

er the particular trustee is appropriate to the trust, not whether the trustee has committed particular acts of misconduct or is totally unfit .... in deciding whether to remove the trustee, the court may consider whether there has been a substantial change in circumstances....

David M. English, *The UTC (2000) Significant Provisions and Policy Issues,* 67 Mo. L.R. 143 (Spring 2002) (emphasis added).

tember 2009 to March 2010, the bank "only seemed to do things when I called above other people's heads, problems getting statements, problems with getting other people's statements, problems having Mom's statements sent to other parties. I've had a hard time getting them to do what I consider basic banking services." N.T. at 45. The PNC relationship manager assigned to the trust accounts changed multiple times immediately after the merger, with the most recent manager being removed for failing to return phone calls. N.T. at 167–68; 179. The manager currently assigned to these trust accounts admitted that he had not contacted Appellant or anyone in the McKinney family in regard to the administration of the trust accounts for a period of over eleven months, starting in September of 2010 and continuing as of the time of trial. N.T. at 155–56. While PNC may competently administer the trusts in question, Appellant has established that the character of that service has changed since PNC assumed responsibility for the administration of the trusts.

At the same time that the trust administration services have declined, Appellant's financial planning needs have increased due to the inheritance of her grandmother's ten-million-dollar estate. N.T. at 56. Appellant asserts that she must make several changes to her finances in order to minimize her tax exposure, and that her financial advisors in Virginia, where all of her other finances are located, stand ready to implement those changes. *Id*, at 58. Appellant's financial advisors and attorneys meet approximately bimonthly in Williamsburg, Virginia. PNC has not been involved in those meetings. *Id*, at 58–59.

Appellant had a personal relationship with several key advisors who left during

or right after the merger with PNC. Those trusted advisors no longer service Appellant's trusts. While the McKinney family resided in Pennsylvania at the time these trusts were formed, the family has long since migrated collectively to Virginia. Currently, no beneficiaries reside in Pennsylvania. Joint Stipulations of Fact and Law, August 9, 2011, at 3 ¶¶ 16–17. The series of mergers not only caused a change in the character of service provided by the trustee, but also weakened the family ties to the original trustee to the point of dissolution. When viewed in conjunction with the fact that Appellant and all of her children reside in and engage in financial planning in Virginia, this constitutes a substantial change in circumstances. N.T. at 70–71. The trial court erred in finding that Appellant failed to establish a substantial change in circumstances by clear and convincing evidence.

In light of our resolution of the question of removal, we also reverse the trial court's award of counsel fees to PNC Bank, without prejudice to PNC's right to seek attorneys' fees following further proceedings.[16] On remand, the trial court must make a definitive finding as to the suitability of SunTrust Delaware as a successor trustee.

Decree reversed and remanded. Jurisdiction relinquished.

16. *See supra* n. 5.