## In re Testamentary Trust of Conti

C.P. of Philadelphia County, O.C. No. 464 ST of 1982

*Laura E. Stegossi*, for Wells Fargo Bank, N.A.

HERRON, *J.*, Sept. 17, 2014—The account filed by trustee Wells Fargo Bank and a related petition filed by beneficiaries of a testamentary trust established by decedent John Conti raise the issue of whether this court should approve a nonjudicial settlement agreement under 20 Pa.C.S.A. §7710.1 that would amend the trust to provide for the removal or resignation of a corporate trustee without cause or court approval. Under §7710.1, the parties are free to enter into a nonjudicial settlement agreements. The intent of this section is to give all beneficiaries and trustees flexibility in the administration of certain trust matters. Seeking court approval of such a nonjudicial agreement would encumber this option. Because there is no need to extend court approval to the proposed nonjudicial settlement agreement, this court declines to do so. Moreover, for the reasons set forth below, court approval of the proposed nonjudicial agreement would lead to unnecessary conflicts with other sections of the PEF code. In contrast, the more limited request for court approval of the resignation of Wells Fargo Bank as trustee and the appointment of the Philadelphia Trust Company as successor trustee is approved under 20 Pa.C.S.A. §7765(a) and 20 Pa.C.S.A. §7764(c).

## Background

John D. Conti died testate October 26, 1980. By Will and codicils dated February 6, 1960, John Conti provided that the residue of his estate should be divided into two separate trusts for the benefit of his wife, Marion Conti, as a marital trust and a residuary trust. The net income of the marital trust was to be paid to Marion for life. Marion was given the right to appoint the corpus of the marital share by her will; if she failed to make such an appointment, the corpus of the marital trust was to be added to the residuary

trust. Marion died on January 12, 1981 without exercising her power of appointment. As a consequence, the corpus of the marital trust was added to the residuary trust. Under Article Fifth of John Conti's will, the net income from the Residuary trust after Marion's death was to be distributed in equal shares to his then living issue per stirpes. This residuary share is to be held in trust until twenty-one years after the death of the last survivor of decedent's wife, children and grandchildren who were living at the time of decedent's death.

In article eleventh of his Will, Mr. Conti provided for the appointment of a single corporate trustee, either by writing of his executor or, by default, to the Broad Street Trust Company. Following Mr. Conti's death, the assets of his estate were awarded to Central Penn National Bank which was appointed trustee of the Residuary Trust by Adjudication dated June 6, 1985.1[1] Through various mergers, the accountant Wells Fargo Bank, N.A., succeeded Central Penn National Bank and has been serving as the sole Trustee of the Residuary Trust. On September 4, 2013, Wells Fargo Bank filed an account of its administration of the Trust, covering the period October 1, 2009 through August 26, 2013.

Within weeks of the filing of the account, certain "sui juris income and remainder beneficiaries of the Residuary Trust" ("beneficiaries") filed a petition to modify the trust

---

1. *See* 10/7/13 Wells Fargo Petition, ¶ 19; 9/16/13 Sui Juris beneficiaries petition, ¶21. Regrettably, the accountant's petition for adjudication does not flesh out the details of this appointment. According to the attached letter dated August 4, 2014 of counsel for trustee Wells Fargo, the successor to Broad Street Trust Company was Continental Bank. The June 6, 1985 partial adjudication by Judge Pawelec notes that when Continental Bank declined to serve as trustee, Central Penn National Bank was thereafter approved as trustee "conditioned upon the fact that it be the sole trustee." 6/6/85 partial adjudication at 11 (Pawelec, J.).

document to include provisions for the removal, resignation and appointment of a trustee because John Conti's will did not provide for these contingencies. In seeking this broad relief to modify the trust, the beneficiaries rely on 20 Pa.C.S. §7710.1 which provides for nonjudicial settlement agreements as well as *In re McKinney*, 2013 Pa. Super. 123, 67 A.3d 824 (2013).[2] More specifically, they propose the following amendments of the trust document:

(1) From time to time and without cause, and without permission of any court, the income beneficiaries who are then sui juris may remove any corporate trustee acting hereunder by a writing delivered to such corporate trustee stating the effective date of the removal; provided that if there are then five or fewer sui juris income beneficiaries, all sui juris beneficiaries must consent in writing to the removal, and if there are then more than five such beneficiaries, a majority of sui juris beneficiaries must consent in writing to the removal.

(2) If the sui juris income beneficiaries exercise their power to remove a corporate trustee under subparagraph (i) above, the sui juris income beneficiaries who consented to the removal shall thereupon appoint in writing a substitute corporate trustee, which substitute corporate trustee shall be located in the United States.

(3) Without permission of any court, the corporate trustee may resign by a writing lodged with the permanent records of the trust and notice to the beneficiaries, whereupon a substitute corporate trustee shall be appointed by the beneficiaries in the manner

---

2. 9/16/13 Sui Juris beneficiaries petition, ¶ 25.

provided in subparagraphs (i) and (ii) above as if they had removed the corporate trustee.[3]

A few weeks later, the trustee Wells Fargo Bank, N.A. filed a similar, but more limited, petition that merely sought court approval of its resignation pursuant to 20 Pa.C.S.A. §7765(a) as trustee of the Residuary Trust under the Will of John Conti. In addition, Wells Fargo sought court approval of the Philadelphia Trust Company as the new, substitute trustee under 20 Pa.C.S.A. §7764(c) based either on the unanimous agreement of the qualified beneficiaries of the trust or by court approval.[4]

The beneficiaries also filed objections to the account and petition for adjudication filed by Wells Fargo. More specifically, they objected, inter alia, to the requested termination fee for Wells Fargo, certain legal fees incurred by Weber, Gallagher et al, and the Pennsylvania Inheritance Tax Returns.[5]

After a period of discovery, the parties informed the court by letter dated June 30, 2014 that they had reached a settlement and release agreement regarding the administration of the trust and the second account that had been filed September 4, 2013. Based on this settlement, the beneficiaries withdrew their objections to the second account. Under the settlement and release agreement, the parties have agreed that the request for Wells Fargo's attorneys' fees and costs paid from the trust will be limited as set forth in the Agreement and that the termination fee is waived. A copy of the settlement and release agreement is attached, and its terms are incorporated in this adjudication. The beneficiaries acknowledge that they have each had

---

3. 9/16/13 Sui Juris beneficiaries petition, ¶ 32.
4. 10/7/13 Wells Fargo petition, ¶¶ 28-39.
5. 9/26/13 Sui juris beneficiaries' objections.

an opportunity to examine the second account, which has been updated through March 31, 2014 and the sub account for the trust (which has not been formally filed) and they approve the discharge of trustee Wells Fargo for the administration of the trust without the delay of filing either of these accounts with the court. The parties agree that the second account is ready for adjudication, along with the two unopposed, and pending petitions: (1) Wells Fargo Bank's petition to approve its resignation as trustee and the appointment of The Philadelphia Trust Company, as substitute trustee and; (b) the beneficiaries' petition to modify the trust to provide for the removal and resignation of the corporate trustee without cause or court approval.

## Legal Analysis: Beneficiaries Petition to Amend the Trust

Chapter 77 of the PEF Code, or the Pennsylvania Uniform Trust Act, was enacted fairly recently in 2006. It spans various subchapters with provisions that are at once distinct and interrelated. 20 Pa.C.S.A. §7701 (noting that subchapters A through I are encompassed within the Uniform Trust Act). In terms of this act, the petition of Wells Fargo Bank seeking court approval of its resignation is fairly straightforward and implicates clearly applicable PEF Code provisions. In essence, Wells Fargo is seeking court approval of its resignation and of the appointment of the Philadelphia Trust Company as substitute trustee of the Residuary Trust Under the Will of John B. Conti, Deceased. This request is granted based on specific provisions of the PEF Code. *See, e.g.* 20 Pa.C.S.A. §7765(a)("A trustee may resign with court approval) and 20 Pa.C.S.A. §7764(c)(2) & (3)(a vacancy in the trusteeship of a noncharitable trust may be filled by a person appointed by unanimous written agreement of the qualified beneficiaries or by a person

appointed by the court).

In contrast, the beneficiaries' petition for court approval of a nonjudicial settlement agreement to modify the trust term is more problematic because it implicates a number of PEF sections that have not been subjected to judicial interpretation. The beneficiaries, moreover, have neither acknowledged nor tackled these other PEF Code provisions. Finally, the beneficiaries have not attached a copy of any "nonjudicial settlement agreement" to their petition.

Section 7710.1 of the PEF Code clearly allow all the beneficiaries and the trustee of a trust to enter into a binding *nonjudicial* settlement agreement as to the resignation or appointment of a trustee or the modification of the trust:

§7710.1 Nonjudicial settlement agreements

(a) (Reserved).

(b) General rule — Except as otherwise provided in subsection (c), all beneficiaries and trustees of a trust may enter into a binding nonjudicial settlement agreement with respect to any matter involving the trust. The rules of subchapter C (relating to representation) shall apply to a settlement under this section.

(c) Exception — A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under this chapter or other applicable law.

(d) Matters that may be resolved — Matters that may be resolved by a nonjudicial settlement agreement include the following:

(1) The interpretation or construction of the provisions of a trust instrument.

(2) The approval of a trustee's report or accounting or waiver of the preparation of a trustee's report or accounting.

(3) Direction to a trustee to perform or refrain from performing a particular act.

(4) The resignation or appointment of a trustee and the determination of a trustee's compensation.

(5) Transfer of a trust's situs.

(6) Liability or release from liability of a trustee for an action relating to the trust.

(7) The grant to a trustee of any necessary or desirable power.

(8) The exercise or nonexercise of any power by a trustee.

(9) Questions relating to the property or an interest in property held as part of a trust.

(10) An action or proposed action by or against a trust or trustee.

(11) The modification or termination of a trust.

(12) An investment decision, policy, plan or program of a trustee.

(13) Any other matter concerning the administration of a trust.

(e) Request of court. — Any beneficiary or trustee may

request the court to approve a nonjudicial settlement agreement or determine whether the representation provided in subchapter C was adequate or whether the agreement contains terms and conditions the court could have properly approved. 20 Pa.C.S.A. §7710.1

The comments to this section underscore that the "resolution of disputes by nonjudicial means is encouraged" and that this section "facilitates the making of such agreement by giving them the same effect as if approved by the court."[6] In light of this section, court approval of a nonjudicial settlement agreement would be superfluous. Moreover, approving the proposed agreement would force this court to diverge from the role and standards envisioned for it by other sections of the PEF Code. The analysis differs as to whether the resignation or removal of a trustee is at issue. Each issue must, therefore, be addressed separately.

A. Proposed Amendment of the Trust for Resignation of the Corporate Trustee Without Cause or Court Approval

Section 7710.1 does provide that the resignation or appointment of a trustee is a matter that may be resolved by nonjudicial settlement agreement. 20 Pa.C.S.A. § 7710.1(d)(4). Under this broad provision, all beneficiaries and trustees of a trust may enter into a binding settlement agreement that is nonjudicial but would have "the same effect as if approved by the court."[7] The clear intent of this section is to give all beneficiaries and trustees of a trust the flexibility to agree on the resignation of a trustee without the formality of seeking court approval. Seeking court approval would thwart that intent. It also creates conflicts

---

6. 20 Pa.C.S.A. §7710.1, Uniform law comment.
7. 20 Pa.C.S.A. §7710.1, Uniform law comment.

for the court. This is because when a court is presented with a petition to approve the resignation or removal of a trustee, it is compelled to adhere to other sections of the PEF that specifically address these issues.

Another key factor that any court has to consider is the intent of the settlor or testator. Where a settlor's intent is clear, it controls over any contrary provision of the PEF Code. 20 Pa.C.S.A.§7705(a). Where a testator or settlor does not provide for a certain contingency, the provisions of the PEF Code apply by default.[8] It is thus clear that if John Conti had provided a procedure for the resignation of a trustee, that intent would control. But while John Conti did not provide for the resignation of a corporate trustee, he did provide for a single corporate trustee in article eleventh of his Will. This clearly expressed intent of John Conti for a single corporate trustee triggers the very specific limitations set forth in section 7765 of the PEF Code which provides:

§7765. Resignation of trustee; filing resignation

(c) without court approval and without authorization in trust agreement —

(1) Unless expressly provided to the contrary in the trust instrument, an individual trustee may resign without court approval and without authorization in the trust instrument if:

---

8. *See In re McKinney*, 2013 Pa. Super. 123, 67 A.3d 824, 826 n.1 (Pa. Super. 2013)("[w]hen circumstances arise that are not explicitly considered by the trust document, such as when beneficiaries request the removal of a trustee notwithstanding the trust document's lack of a portability clause, Pennsylvania's Probate, Estate and Fiduciaries Code provides a set of default rules that will govern the proceedings"). *See also* 20 Pa.C.S.A. A. §7705, Uniform Law Comment (the "Uniform Trust Code (UTC) is primarily a default statute).

(i) there is at least one cotrustee and all cotrustees consent in writing to the resignation; and

(ii) all the qualified beneficiaries consent in writing to the resignation.

(2) *This subsection shall not authorize the sole trustee of a trust to resign unless the trust instrument names a successor trustee or provides a method for appointing a successor trustee, and in either case the resignation shall not be effective until the successor trustee accepts the appointment in writing.*

20 Pa.C.S.A. §7765(c)(2)(emphasis added)

In the present case, the beneficiaries acknowledge that there is no provision in the trust document for the resignation or appointment of a trustee although John Conti did provide for a sole corporate trustee.[9] Therefore, section 7765(c)(2) is clearly on point and does not permit a sole corporate trustee to resign without court approval. The beneficiaries, however, did not tackle the statutory road block presented by section 7765(c)(2) for court approval, ostensibly because they have opted for a nonjudicial settlement agreement under 20 Pa.C.S.A. 7710.1. However, for a court to formally approve this broad use of nonjudicial settlement agreements would eviscerate 20 Pa.C.S.A. §7765(c)(2). In reaching this conclusion, there regrettably is no explicit guidance in the comments. By distinguishing between trustee resignations where there is a cotrustee and where there is only a sole trustee, section 7765 appears to preserve the settlor's intent that a corporate fiduciary be involved with making decisions for a trust rather than abdicating that supervisory

---

9. 9/16/13 Sui Juris beneficiaries petition, ¶ 24.

role to the beneficiaries alone.

B. Proposed Amendment of the Trust to Allow Removal of a Corporate Trustee Without Cause or Court Approval

Likewise, the beneficiaries' nonjudicial agreement to modify the trust to permit the removal of a corporate trustee without court approval conflicts with the specific role assigned to a court when considering removal of a trustee under 20 Pa.C.S.A. § 7766. In contrast to resignations of trustees, the PEF Code provision for nonjudicial settlement agreements as set forth in section 7710.1 does not include removal of trustees as a matter that may be resolved under this section, although that list is admittedly nonexclusive.[10] Instead, section 7766 of the PEF Code provides specific requirements for the removal of a trustee:

(a) Request to remove trustee; court authority. — The settlor, a cotrustee or a beneficiary may request the court to remove a trustee or a trustee may be removed by the court on its own initative.

(b) When court may remove trustee. — The court may remove a trustee if it finds that removal of the trustee best serves the interests of the beneficiaries of the trust and is not inconsistent with a material purpose of the trust, a suitable cotrustee or successor is available and:

(1) the trustee has committed a serious breach of trust;

(2) lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3) the trustee has not effectively administered the trust because of the trustee's unfitness, unwillingness or

10. *See generally* 20 Pa.C.S.A. §7710.1(d).

persistent failures; or

(4) there has been a substantial change of circumstances. A corporate reorganization of an institutional trustee, including a plan of merger or consolidation, is not itself a substantial change of circumstances.

20 Pa.C.S.A. §7766.

In essence, the modification that the beneficiaries propose would allow for the no-fault removal of a trustee which under 20 Pa.C.S.A. § 7766(b)(4) requires a showing "by clear and convincing evidence that: (1) the removal serves the beneficiaries' best interests; (2) the removal is not inconsistent with a material purpose of the trust; (3) a suitable successor trustee is available; and (4) a substantial change in circumstances has occurred." *In re McKinney*, 2013 Pa. Super. 123, 67 A.3d 824, 838 (Pa. Super. 2013). As the *McKinney* court observed, "[t]his is the first instance in which we have been asked to interpret and apply Section 7766(b)(4)...." *McKinney*, 67 A.3d at 830. Likewise, no precedent was presented as to the interplay between the trustee removal provisions of section 7766(b)(4) and the nonjudicial settlement agreement provisions of section 7710.1. Although the beneficiaries invoke *In re McKinney* to support their broad request for court approval of their nonjudicial settlement agreement to amend the trust document to allow future removals of trustees without court approval, *McKinney* does not go that far. The *McKinney* court was not presented with a nonjudicial settlement agreement to broadly amend a trust to permit future removals of trustees without petitioning a court for review. Instead, the Superior Court in *McKinney* was faced with a much narrower issue: whether a trial court erred in refusing the

request of the beneficiaries of a long-term trust to remove a trustee under the "no-fault" provisions of 20 Pa.C.S. §7766(b)(4), which the court characterized as a question of first impression. The *McKinney* court concluded that the trial court erred in refusing the beneficiaries' request to remove the trustee of a long-term family trust. In so doing, however, the court did not abdicate the role of the court in making such determinations. On the contrary, it set forth a vigorous standard of review for a court to apply in response to requests to remove a trustee for "no-fault:"

> *We conclude that courts should consider the following factors* when determining whether a current trustee or a proposed successor trustee best serves the interests of the beneficiaries: personalization of service; cost of administration; convenience of the beneficiaries; efficiency of service; personal knowledge of trusts' and beneficiaries' financial situation; location of trustee as it affects trust income tax; experience; qualifications; personal relationship with beneficiaries; settlors' intent as expressed in the trust document; and any other material circumstances.

*In re McKinney*, 67 A.3d at 833 (emphasis added).

The salient point about *McKinney* is that it reaffirms-rather than diminishes-the role of the court in reviewing specific petitions to remove trustees.

In this case, however, the beneficiaries base their petition on a nonjudicial settlement agreement as set forth in PEF Code section 7710.1. By its terms, court approval is unnecessary for a nonjudicial agreement. In light of the clear requirements set forth in section 7766 for when a court may approve the removal of a trustee, this court will not bestow a superfluous imprimatur on this nonjudicial agreement.

Conclusion

During the administration of the trust, Wells Fargo became aware that not all of the assets due and owing to the Residuary Trust were actually transferred from the decedent's estate. Consequently, Wells Fargo filed a petition on October 27, 2010, which judge O'Keefe granted by decree dated March 21, 2011 to authorize Wells Fargo to recover any assets in the name of the decedent, the decedent's estate or in the name of Alda Conti Girardi, the executrix of the estate of John B. Conti.[11] In its petition for adjudication, trustee Wells Fargo now seeks an updated decree transferring the authorization of Wells Fargo Bank, N.A. to recover any assets in the name of John B. Conti; in the name of the estate of John B. Conti.; or, in the name of Alda Conti Girardi, executrix of the estate of John B. Conti to The Philadelphia Trust Company, as substitute trustee. This request is granted by a contemporaneously issued decree. The accountant requests approval of the payment of $3,092.60 from principal of the trust to Weber Gallagher Simpson Stapleton Fires & Newby LLP as compensation for its advancement to the Trust of the court filing fee for the account which is hereby approved. Wells Fargo also raised as issues for adjudication its request for trustee's terminating fee and payment of legal and filing fees, but both of these issues are resolved by the June 16, 2014 settlement and release agreement as incorporated herein. As a question for adjudication, the petitioner requests discharge of Wells Fargo Bank as trustee, which is granted conditioned on the absolute confirmation of the account and the transfer and delivery of assets in accordance with this adjudication.

---

11. 10/7/13 Wells Fargo Petition, ¶¶ 21-24; 9/14/13 Accountant's petition for adjudication, Rider 13(a).

According to the petition for adjudication, the Eestate of John B. Conti, deceased, paid Pennsylvania Transfer Tax in the amount of $68,822.00 on March 2, 1983. As stated in the March 21, 2011 adjudication, the Pennsylvania Attorney General's Office has preserved its right to claim any Pennsylvania transfer inheritance tax as may be due and assessed without prejudice to the Commonwealth to pass on debts and deductions. The account for the period October 1, 2009 through August 26, 2013 states that there is a balance of principal before distribution of $ 2,426,598.59 and a balance of income before distribution is $ 463,820.68. The parties attached as exhibit B to their June 16, 2014 settlement and release agreement an updated account for the second account covering the period October 1, 2009 through March 31, 2014 which shows a balance of principal before distribution of $2,419,037.24 and a balance of income before distribution of $518,800.11 for a total of $ 2,937,837.35. This sum, composed as stated in the account, plus income received since the filing thereof and subject to distributions already properly made or transfer inheritance tax which may be due and subject to the parties' June 16, 2014 settlement and release agreement, is awarded as set forth in the accountants' petition:

**Proposed Distributees**

| Income | Amount/Proportion |
| --- | --- |
| Elmer J. Conti, Jr. | 1/12 of Trust Income |
| Robert B. Conti | 1/12 of Trust Income |
| Lauren C. Manning | 1/12 of Trust Income |
| Carolyn M. Avellino | 1/12 of Trust Income |
| Eric A. Girardi | 1/6 of Trust Income |
| Nona M. Girardi | 1/6 of Trust Income |
| Emma M.L. Conti | 1/3 of Trust Income |

Principal

| The Philadelphia Trust Company, in light of the Court's approval of the resignation of Wells Fargo Bank, N.A. and the appointment of Philadelphia Trust Company as Substitute Trustee | 100% of Trust Principal |
|---|---|

Leave is hereby granted to the accountants to make all transfers and assignments necessary to effect distribution in accordance with this adjudication.

And now, this 17th day of September 2014, the account is confirmed absolutely.

Exceptions to this adjudication may be filed within twenty (20) days from the date of the issuance of the adjudication. An appeal from this adjudication may be taken to the appropriate Appellate Court within thirty (30) days from the issuance of the Adjudication. *See* Phila. O.C. Rule 7.1.A and Pa. O.C. Rule 7.1 as amended, and Pa.R.A.P. 902 and 903.